## Wytheville.

E. WARREN WALL, WHO SUES, ETC. V. MAX LANDMAN.

June 13, 1929.

The opinion states the case.

*L. M. Bazile,* and *A. B. Dickinson,* for the appellant.

*J. Taylor Thompson,* for the appellee.

PRENTIS, C. J., delivered the opinion of the court.

The appellant, E. Warren Wall, suing for himself as well as for the lawful heirs of his body, born or to be born, filed his bill against Max Landman. He alleges in substance that as owner of the building and lot immediately contiguous to the building and lot of Landman, he has a right of way across the roof of the

one-story building of Landman, claiming it by grant, of necessity and by prescription; that Landman has closed the right of way, and proposes to make an addition to his one-story building and thus permanently to close it.

The defendant answered the bill, denied the right claimed, and upon the hearing the trial court declined to perpetuate the temporary injunction which had been theretofore granted, dissolved it and dismissed complainant's bill.   It is from that decree that this appeal is taken.

The title of both owners is derived by mesne conveyances from a common grantor, Thomas Tredway, who, being the owner of a lot on which there was a brick building, three stories in height and containing two stores, fronting on Main street, Farmville, Va., conveyed the southern half of the lot and building, by deed dated April 11, 1842, to Jackson.   This is the property now owned by Landman.   The northern half of the property, now owned by Wall, is the half then retained by Tredway.

That conveyance describes the property conveyed thus:  "*  *  one lot and house in Farmville, known in the plan of said town as parts of numbers 10 and 11, it being one half of the main building purchased by said Tredway of Patrick H. Jackson, trustee for Abraham Z. Venable, and about twenty-three feet of front ground on Main street, running back to next street, and adjoining the lot of Hillery D. Richardson, and all the improvements on said front ground running back to next street, the said Thomas Tredway and Mary, his wife, reserves to themselves, their heirs, etc., the joint use of one certain alley about three feet wide, running from Main street to back part of said Tredway's main building, and also reserves to himself,

heirs, etc., the joint of one other certain alley ten feet wide, running from cross street to said Tredway's lot."

(a) It is claimed that the reservation of the alley about three feet wide, running from Main street to back part of Tredway's main building, as construed by the parties, meant not only that alley running from Main street towards the rear or opposite end of the property, but also that this right of way turned abruptly substantially at a right angle, and extended directly across the lot which was thereby granted, to the other half of the lot which was retained, and that the right of way across the roof of the one-story building since erected has been substituted for that reservation.

It is observed that in the same deed there was also reserved an alley ten feet wide, and this alley is shown to be an alley across the entire property to Third street, is quite clearly located, affords access to the rear of the Wall lot, and is now in existence.

However inapt the draftsman of the conveyance may have been, it seems to us incredible that it was intended so to divert and change the course of the right of way beginning on Main street and on the south side of the property conveyed. We find nothing whatever in the language of the deed to support such a construction. It does violence to the language used. The provision for the ten-foot alleyway in the same conveyance affords easy access to the rear of the property which was retained by the grantor, Tredway, and had it been intended to provide for another means of access immediately in the rear of the building which was retained by Tredway, it seems to us perfectly evident that the deed would have contained some language indicating such a purpose. It is hardly necessary in this case to invoke one cardinal rule in such cases—that such a reservation should be con-

strued most strongly against the grantor, Wall's predecessor in title.

The words "main building" are used twice in the deed, and clearly refer to the entire building then known as the Tredway building, half of which was conveyed to Jackson by that conveyance. No such right of way as is here claimed, either on the surface of the ground or across the roof of the building conveyed, was reserved by that deed, and this, we think, is evident.

■ (b) As to the claim of right of way by necessity, made in the bill, it is only necessary to say that the owners of the Wall property not only have access to their property from Main street, on which it fronts, but also through the ten-foot alley from Third street to which it extends.

■■ There remains to be considered the claim that the right has been acquired and exists by prescription. As to this, of course, the initial burden of proof is upon the complainant. He has failed to sustain that burden. It is unnecessary to analyze or weigh the evidence meticulously, because there is little material conflict. It sufficiently appears that the previous owners of the Landman building, in order to gain access to the second and third stories of the building directly from the three-foot alleyway, or hallway, as it now is, would have to pass through two rooms on the second floor. There was a doorway in the rear wall of the original building, and these rooms opened on a porch from which there was access to the upper floors. When a one-story addition to the rear of the Landman store was built, which necessitated the removal of this porch, it became convenient to cross the roof in order to gain access to that rear door. The owners of the Wall property also destroyed the back porch which was attached to the rear of their building, and erected a two-story addition back of their building, and then it became

convenient to use the same path across the roof which was also used for their own convenience by the owners of the Landman property—that is, to cross the roof of the Landman one-story addition from the three-foot alleyway on the south to a door in the southern wall of their two-story addition. That this walkway across the roof has been so used from time to time is manifest, but there is no evidence that any of Wall's predecessors in title ever claimed any such legal right as is here asserted. Mr. Wall's immediate predecessor in title was his father, who died in 1912, and there is no testimony that the elder Wall ever claimed any such adverse right. It is fully shown that long after the Tredway conveyance of 1842, there were two separate back porches affording access to both properties; that there was a partition which divided the properties at the point in the property line at which the right of way is now claimed. As late as 1919 this occurred: Whitlock rented the upper floors from Fleming, Landman's predecessor in title, with the understanding that he would not have to take it unless he could also rent from Wall. Whitlock wished to keep a boarding house there. He describes this way when he took possession in July, 1919, thus: "I saw one plank eight or ten inches wide laid on some little blocks from the alleyway to the entrance to his house;" that it ran right across the top over the tin. He, Whitlock, the tenant of both properties, wished to combine them, and testified that his wife said that she could not walk on one plank, and so he, with the aid of one of his boarders, fixed a platform and had some railing put around it. This was not done under any adverse claim or design to establish or perpetuate the permanent use of the walkway for the benefit of the Wall property. Whitlock was not told by Wall that he had any such right,

and did not use this walkway to move in, but used the entrance by way of the back yard steps behind the Wall property, which he testifies was a convenient method of access to the upstairs rooms, and that most of his boarders came up and down those steps to their meals.

We believe it to be perfectly well settled that where the owner of land opens a way thereon for his own use and convenience, the mere use by his neighbor under circumstances which neither injures the way nor interferes with the owner's use of it, in the absence of some other circumstance indicating a claim of right, will not be considered as adverse, and will never ripen into a prescriptive right. In order to ripen into a prescriptive right, the claim to the use of the way must be adverse—that is, not accorded as a mere accommodation, but asserted under a claim of right hostile to the rights of the owner of the servient estate, so as to expose the claimant to an action if his claim is not well founded. If it be fairly shown that the use is permissive in its inception, it will never by mere lapse of time ripen into a hostile right. *Gaines* v. *Merryman*, 95 Va. 660, 29 S. E. 738; *Reid* v. *Garnett*, 101 Va. 47, 43 S. E. 182; *Williams* v. *Green*, 111 Va. 205, 68 S. E. 253; *Landrum* v. *Tyler*, 126 Va. 600, 101 S. E. 788; *Davis* v. *Wilkinson*, 140 Va. 678, 125 S. E. 700; *Totten* v. *Stuart*, 143 Va. 201, 129 S. E. 217.

We find no error in the decree.

*Affirmed.*