# REGINALD H. PETTUS, ET AL.

## V.

# JOHN R. KEELING, ET AL.

Record No. 831855

January 16, 1987

Present: All the Justices

*Rayner V. Snead, Jr. (Edward S. Graves; Edmunds and Williams*, on brief), for appellants.

*Joseph R. Johnson, Jr.; David D. Embrey (Johnson & Cunningham*, on brief), for appellees.

COMPTON, J., delivered the opinion of the Court.

In this appeal in an equity suit, the main issue is whether the evidence was sufficient to sustain the trial court's finding that a prescriptive easement had been established.

The property involved in this controversy is located in Charlotte County near the Keysville Reservoir in a rural area between Route 652 on the north and Route 40 on the south. The way in question is an unimproved road approximately 3,300 feet in length extending to Route 652 from undeveloped and uncultivated property owned by appellees John H. Keeling and Jean B. Keeling, his wife (sometimes hereinafter, Keeling). For a portion of its distance, the way traverses property owned by appellants Reginald H. Pettus and Ann E. Pettus, his wife, (sometimes hereinafter, Pettus) and property owned by appellant Margaret Anderson. One travelling on the roadway from the Keeling tract would move generally east and then north until the road intersects Route 652 near Anderson's residence, whose property adjoins Pettus' property.

Keeling purchased his land in 1955. Pettus purchased his property in 1956, 1965, 1969, and 1971. In 1977, Pettus blocked the road in question near its northern terminus.

In 1981, Keeling filed the present suit. He prayed that the court determine he had an easement by necessity, implication, or prescription over the roadway and over the lands of the defendants; that defendants be enjoined from blocking his right of ingress and egress to and from his property; that damages be assessed against Reginald H. Pettus for wrongful blocking of the road; and that general relief be awarded. After taking a view of the area in question, the chancellor held ore tenus hearings during five days over a

period of twelve months in 1982 and 1983 and considered two *de bene esse* depositions.

The trial court ruled that, based upon the evidence, Keeling was vested with an easement "through and over the lands of the defendants for the purpose of ingress and egress to and from" Keeling's property and Route 652. The court also decided that the "easement shall be located over the course of the old roadway as presently situated on said property." The court further decided that the easement was 14 feet wide, consisting of seven feet on each side of the center line of the existing roadway. The court also ordered defendants to promptly remove all obstructions erected by defendants which "in any way" block or partially block the easement in question. The court enjoined defendants from blocking the roadway in the future, but provided that the parties have the right to erect and maintain gates and cattle guards across the easement pursuant to applicable statutes. The court denied Keeling's request for compensatory and punitive damages and for attorneys' fees. Execution of the 1983 final decree, from which we awarded defendants this appeal, was suspended pending appeal.

Defendants contend the trial court erred in holding that a prescriptive easement had been established, in holding that the easement was 14 feet in width, and in ordering removal of obstructions. We shall discuss the issues in the order presented.

■ There is no dispute among the parties upon the basic law of prescriptive easements applicable to this case. In order to establish a private right of way over lands of others by prescription, the claimant must prove that his use of the roadway was adverse, under a claim of right, exclusive, continuous, uninterrupted, and with the knowledge and acquiescence of the owners of the land over which it passes, and that the use has continued for a period of at least 20 years. *Williams* v. *Green*, 111 Va. 205, 206, 68 S.E. 253, 254 (1910). *Accord Burks Brothers of Va., Inc.* v. *Jones*, 232 Va. 238, 245-46, 349 S.E.2d 134, 139 (1986). "Where there has been an open, visible, continuous and unmolested use of a road across the land of another for at least twenty years, the use will be presumed to be under claim of right, and places upon the owner of the servient estate the burden of rebutting this presumption by showing that the use was permissive, and not under claim of right." *Rives* v. *Gooch*, 157 Va. 661, 663, 162 S.E. 184, 184 (1932). *Accord Martin* v. *Proctor*, 227 Va. 61, 65, 313 S.E.2d 659, 662 (1984).

But where the use of a roadway by persons owning property in the immediate area has been in common with use of the way by members of the general public, the essential element of exclusiveness is lacking because the use of the way is dependent upon the enjoyment of similar rights by others, and no prescriptive right arises. *Burks Brothers of Va., Inc.*, 232 Va. at 246, 349 S.E.2d at 139. However, when each landowner asserts his own right, independent of all others, to use the way, and no rights are dependent "upon the common enjoyment of similar rights by others," prescriptive rights may arise. *Id.* This is because when each user independently asserts his right to enjoy the way for himself, "such use is exclusive even though others assert similar rights for themselves." *Id.*; *Totten* v. *Stuart*, 143 Va. 201, 203-04, 129 S.E. 217, 218 (1925). Moreover, when a landowner keeps open and uses a roadway, the use by a claimant in common with the public must generally be regarded as permissive or under an implied license, but not adverse, unless there is some "decisive act" on the part of the claimant indicating a separate and exclusive use under claim of right. *Eagle Lodge, Inc.* v. *Hofmeyer*, 193 Va. 864, 877, 71 S.E.2d 195, 202 (1952).

Our cases apparently do not contain a definitive statement fixing the nature of the burden of proof that a claimant must bear to establish an easement by prescription. The Court has said that the burden is on the claimant to prove the necessary elements "clearly." *Id.* But the Court also has indicated that such a claim may be established by "the greater weight of the evidence." *Totten*, 143 Va. at 204, 129 S.E. at 218. *See Davis* v. *Wilkinson*, 140 Va. 672, 678, 125 S.E. 700, 702 (1924) (private way established by "the weight of all the evidence").

We believe, however, and now hold, that the claimant should be required to establish an easement by prescription by clear and convincing proof. By analogy, we have decided that a right of way by necessity must be proven by clear and convincing evidence. *Middleton* v. *Johnston*, 221 Va. 797, 803, 273 S.E.2d 800, 803 (1981). In addition, the burden of proving the elements of adverse possession is by "clear and satisfactory" evidence. *Matthews* v. *W. T. Freeman Co.*, 191 Va. 385, 395, 60 S.E.2d 909, 914 (1950). Therefore, we perceive no sound reason why the burden of proving a prescriptive easement should be by a mere preponderance, particularly when "it may be said that the law is jealous of a claim to

an easement." *Eagle Lodge, Inc.*, 193 Va. at 877, 71 S.E.2d at 202.

In support of their contention that the evidence was insufficient to establish a prescriptive easement, defendants argue that the roadway was used by tacit permission of the owners of the land over which it ran. They argue that because the area was divided into several parcels, one owner's use of the road was dependent on his having the permission of the owners of other parcels to travel over their land as their use, in turn, was dependent on his permission to travel over his land. Pettus testified, "Everybody depended on everybody." Defendants say there was no evidence that anyone violated "this neighborly reciprocity by a hostile claiming of rights."

Defendants also contend that the use of the way should be regarded as permissive because the evidence fails to show there was any "decisive act" to set apart Keeling's use from that of the public at large until the road was blocked in 1977. In sum, defendants assert the evidence is "undisputed" that the road in question was used by Keeling, and his predecessors in title, in common with the owners of the "putative servient tenements, the owners of other land in the Area, the owners of land outside the Area, the owners of no land, those who went to schools and cemeteries in the Area, people who hunted and fished in the Area, and the general public."

In addition, defendants argue that the chancellor erroneously placed the burden on them to prove the user was with permission when, in fact, the plaintiffs had failed to present facts sufficient to show a presumed claim of right. Also, defendants argue that even if the burden of proof had been shifted properly to them, they showed the user was permissive. We disagree with defendants' contentions.

A detailed recitation of the facts disclosed by our review of this voluminous record will serve no useful purpose. It is sufficient to state that much of the evidence was conflicting, and in some instances lacked specificity due to faded recollections of aging witnesses. Nevertheless, we have a case in which the trial judge toured the area on foot before the first day of hearings and patiently permitted the parties to develop the facts fully. The chancellor's findings are amply supported by the evidence. We will briefly summarize the pertinent facts and, pursuant to settled ap-

pellate procedure, will state the evidence in the light most favorable to Keeling, who prevailed below.

Even though much of the evidence pertained to events and use of the roadway by Keeling's predecessors in title prior to his purchase in 1955, we will confine our discussion mainly to post-1955 evidence because those facts alone establish that Keeling's use of the way as appurtenant to his land entitled him to the prescriptive easement. Keeling purchased the property for use as a tree farm. Although the parcels in the vicinity of the tract Keeling bought formerly had been inhabited sparsely, residents began moving from the area during the Depression and, by 1950, no one lived nearby. Thus, when Keeling bought his land, the immediate area was uninhabited, unimproved, and uncultivated. The road was described as "a dirt wagon road" that carried "some vehicles" which "hauled logs through there."

At the time of the purchase, Keeling was told by a predecessor in title that the way in question "was the road they used for vehicles to go to 652." Thereafter, Keeling used the road as the only access to his property. The north-south segment of the way had been a part of the road which connected Route 652 on the north and Route 40 on the south. That road had been used in the past as a "short-cut" to Keysville by persons in the general area. But shortly after Keeling purchased his land, the north-south roadway was blocked at a point south of the Keeling property due to construction of the Keysville Reservoir in " '58, '59." Thus, the only outlet from Keeling's property was along the way in question to Route 652.

Relying on the belief that he had a right to use the road, Keeling continued to use it exclusively until Pettus blocked the way in 1977. Between 1956 and 1977, Keeling conducted logging operations over the road periodically. Timber was cut on Keeling's land and pulpwood hauled over the road in both small single-axle trucks and large "tractor-trailers." In addition, Keeling's 34-year-old son testified he used the road "regularly" with his father during the period ending in 1965 while the son attended elementary and high school. Thereafter, according to the son, he continued to use the road "occasionally." Considering the nature of the easement and the uninhabited land which it served, the lack of daily, weekly, or even monthly use for the required period of time did not, under these circumstances, interrupt the continuity necessary

to establish the easement. The way was used openly and obviously when needed by Keeling for more than 20 years.

Furthermore, the evidence shows that use of the roadway was with the knowledge and acquiescence of the defendants. For example, defendant Anderson, who resided at the intersection of the way and Route 652, admitted seeing Keeling use the road. In addition, Reginald Pettus testified that he knew "more about those properties than anybody else in the world." Certainly, it is reasonable to infer that this knowledge would include an awareness of who was using his property as the only outlet from the several parcels to Route 652.

In summary, we hold that the trial court correctly decided that the plaintiffs proved, by clear and convincing evidence, entitlement to an easement by prescription over the lands of Anderson and Pettus. According to familiar principles, an appellate court will not substitute its conclusions for those drawn from the evidence by the trier of fact where, as here, they are not plainly wrong or without evidence to support them.

Alternatively, defendants contend that the trial court erred in establishing a portion of the easement at its northern terminus "in an entirely different location" from the old road which crossed the Anderson land as it intersected Route 652. We reject this argument. In 1977, after Pettus had blocked the roadway, he acquired an easement, in an exchange of property, over Anderson land. Pettus relocated the old way by moving the path of the road. The record is unclear about the exact distance the way was moved. Some witnesses said the path of the way was not moved at all ("basically it's in the same place"), while others testified the way was moved a distance of some feet ("He moved it about, I'll say, 25 or 30 or 40 feet"). Whatever the distance, within these parameters, the trial court acted properly. At the time the roadway was relocated, Keeling's right to use the way had matured. Under these circumstances, where a claimant is using a right of way over his neighbor's property, and for the neighbor's convenience the traveled way is changed, the owner of the dominant estate does not lose his right to use the easement at its new location. *Davis* v. *Wilkinson, supra,* 140 Va. at 680, 125 S.E. at 703; *Hammond* v. *Ryman,* 120 Va. 131, 136, 90 S.E. 613, 614 (1916).

We likewise reject defendants' contention that the trial court erred in holding that the easement was 14 feet wide, extending seven feet on either side of the center line of the dirt road. Where,

as here, the right of way depends on user, the width of the way and the extent of the servitude is measured by the character of the use. *Board of Supervisors* v. *Norfolk and Western Ry. Co.*, 119 Va. 763, 773, 91 S.E. 124, 128 (1916). There was abundant evidence to show that, during the prescriptive period, a variety of vehicles had been used over the road by Keeling in connection with his logging operations. Large and small logging trucks had been employed, causing at times two separate tracks for vehicles. One witness testified that at least a 20-foot width would be required to operate trucks hauling timber over the road. And it should be remembered that the trial judge viewed the whole road in order better to follow the testimony. Thus, the 14-foot width is amply supported by the evidence. *See Lumpkin* v. *McClamroch*, 232 Va. 412, 418, 350 S.E.2d 647, 651 (1986).

Finally, we do not agree with defendants' contention that the chancellor erred in ordering removal of obstructions. The final decree orders defendants "to promptly . . . remove any and all obstructions erected by the defendants respectively which in any way block, or partially block, the roadway and easement in question." The record shows that Reginald Pettus restricted use of the roadway by plowing a portion of it, by erecting two gates across the road, and by planting posts in one track of the roadway. Keeling has been barred from his property and from use of the way for almost ten years. In the meantime, of course, the road has become overgrown because of this denial of access and lack of use. Even though the dominant, not servient, owner has the burden to maintain an easement, *Oney* v. *West Buena Vista Land Co.*, 104 Va. 580, 585, 52 S.E. 343, 344 (1905), the trial court acted properly under these circumstances in requiring defendants to return the easement to the condition existing at the time it was blocked in 1977, shortly after Keeling had been conducting logging operations over the roadway.

For these reasons, the decree appealed from will be

*Affirmed.*