HUBERT EARL CALLAHAN, ET AL.

V.

LAURENCE A. WHITE, JR., ET AL.

Record No. 871086

June 9, 1989

Present: All the Justices

*William A. Parks, Jr. (Parks & Vaugh, P.C.*, on brief), for appellees.

*Michael McHale Collins (J. Gregory Mooney; Collins, Cracker & Mooney*, on brief), for apppellees.

Chief Justice Carrico delivered the opinion of the Court.

This is an appeal from a decree denying the complainants, Hubert Earl Callahan and Margaret M. Callahan, an easement by prescription over the land of the defendants, Laurence A. White, Jr., and Earlene S. White. Finding no error in the decree, we will affirm.

The cause was referred to a commissioner in chancery following the filing of an amended bill of complaint by the Callahans. In the bill, the Callahans sought a decree entitling them to an easement or right-of-way over the land of the Whites and an injunction restraining the Whites from interfering with their use of the right-of-way. The commissioner heard the evidence of the parties and took a view of the property involved before reporting adversely to the Callahans' claim of an easement by prescriptive right.

The evidence adduced before the commissioner shows that the Callahans are the owners of a 210-acre tract of mountainous land in the White Rock Gap area of Alleghany County which they acquired by deed dated July 16, 1965. The property is unoccupied and has not been used for residential purposes since a former dwelling "burned down" in 1934.

The Whites are the owners of a mountainous tract containing 433.5 acres upon which they reside and which they acquired by deed dated January 30, 1976. The 433.5-acre tract is shown on a plat attached to the 1976 deed.

The plat shows that a 40-acre tract marked "Elmore" adjoins the Whites' land at its northeastern corner. Both the Elmore tract and the Whites' land were formerly owned by a common grantor who conveyed out the Elmore tract by deed dated November 29, 1899. The deed made no provision for an easement of ingress and egress to and from the Elmore parcel over the remainder of the parent tract.

The Callahan property and the Whites' land do not share a common grantor. Neither does the Callahan property share a

common grantor with the Elmore tract, although the Callahans' land adjoins the Elmore tract on its northern boundary.

The Callahans contend that the easement to which they make prescriptive claim has provided the only means of access to their property for many years and "has been used by buggies, spring wagons, cattle, horse drawn wagons, cars and pick-up trucks." Their tract, the Callahans assert, will be landlocked " 'unless it has a right of way along the old road bed' " across the Whites' property.

The Callahans state that the plat attached to the Whites' deed establishes the course of the right-of-way as running from State Route 623 through the properties of White and Elmore to the Callahan land. The plat, however, depicts a different layout.

The plat shows a roughly drawn double line running in a northeasterly direction from State Route 623 through the Whites' land to a point near the southwest corner of the Elmore tract and then turning southeasterly away from the Elmore tract, rather than northeasterly as one might expect, and continuing in a southeasterly direction to the easterly boundary of the Whites' land, some distance to the south of both the Elmore tract and the Callahans' land. The double line does not even touch the Elmore tract, much less run through it, or connect with the Callahans' land at any point. Added to this uncertainty is the inconsistent and confusing testimony of the Callahans' witnesses regarding the relative positions of the various parcels of land and the disputed right-of-way. Hence, it is not at all apparent that the Callahans have even established with sufficient clarity the location of the easement they claim.

Furthermore, in confirming the report of the commissioner in chancery, the trial court stated in a letter opinion that "the user incident to the 'Callahan Tract' was not under 'claim of right *exclusive* to the Callahans' for the prescriptive period." (Emphasis added.) To the contrary, the court wrote, "the 'claim of right' was dependent primarily upon 'right' or 'claim of right' of the 'Elmores.' "[1]

---

[1] The Callahans suggest that it was somehow improper for the trial court to consider the element of exclusiveness because the commissioner in chancery had not made any finding that the Callahans' right to an easement by prescription was dependent upon Elmore's enjoyment of a similar right. The commissioner, however, was directed only "to hear evidence and report his findings of fact to the Court," which he did, and the court merely applied the law to the facts.

 The essential elements for the establishment of a prescriptive easement are well settled:

> To establish a private right of way by prescription over lands of another, the claimant must prove, by clear and convincing evidence, that his use of the roadway was adverse, under a claim of right, *exclusive*, continuous, uninterrupted, and with the knowledge and acquiescence of the owners of the land over which it passes, and that the use has continued for at least 20 years. Where there has been an open, visible, continuous, and unmolested use of a road across the property of another for the prescriptive period, the use will be presumed to be under a claim of right, and places upon the owner of the servient estate the burden to rebut this presumption by showing that the use was permissive, and not under a claim of right.

*Ward* v. *Harper*, 234 Va. 68, 70-71, 360 S.E.2d 179, 181 (1987) (emphasis added).

> [W]here the use of a roadway by persons owning property in the immediate area has been in common with use of the way by members of the general public, the essential element of exclusiveness is lacking because the use of the way is dependent upon the enjoyment of similar rights by others . . . .

*Pettus* v. *Keeling*, 232 Va. 483, 486, 352 S.E.2d 321, 324 (1987). And, where the essential element of exclusiveness is lacking, no presumption of a claim of right arises from evidence of long use. *Reid* v. *Garnett*, 101 Va. 47, 49, 43 S.E. 182, 183 (1903).

██ Here, the essential element of exclusiveness is lacking because the right of the Callahans to use the purported roadway across the Whites' land is dependent upon the enjoyment of a similar right by Elmore. As noted previously, the 1899 conveyance to Elmore included no express grant of an easement of ingress and egress across the parent tract. Elmore was entitled to use the parent tract for access, therefore, if at all, only as a matter of necessary implication. When the Callahans' predecessors in title began using the roadway, which occurred some time after the 1899 con-

veyance to Elmore,[2] their use could not be distinguished from, and, hence, was not independent of, but dependent upon, Elmore's right to use the roadway.

The Callahans suggest that our decision in this case should be controlled by *Ward* v. *Harper, supra*, in which we affirmed a finding of the existence of a prescriptive easement by the same trial judge who in this case found against a prescriptive right. The distinguishing feature, however, is the presence in this case of an intervening "Elmore" tract.

As indicated at the outset, our conclusion is to affirm the judgment of the trial court.

*Affirmed.*

---

[2] The Callahans contend that their entitlement to a prescriptive easement across the Whites' land was established long before the 1899 conveyance to Elmore. This contention, however, is completely unsupported by the record and is based solely upon the proposition that the father of the appellant Hubert Earl Callahan was born on the purported dominant tract on January 25, 1874. The earliest date established by the record with respect to the use of the easement by the Callahans' predecessors in title is some time in the year 1913, and this date, of course, is well after the 1899 conveyance to Elmore.