## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Henry F. Simms, Jr.

v.

Betty L. Purnell et al.

February 26, 1990

Case No. C-88-54

By JUDGE WILLIAM H. LEDBETTER, JR.

In this chancery suit, the plaintiff claims title by adverse possession to a variable-width strip of land, and he claims a prescriptive easement along a gravel road that traverses the defendants' property. The commissioner in chancery to whom this cause was referred has filed a report rejecting both claims, and the plaintiff has filed exceptions.

Simms owns and resides on a 23.8-acre tract (the "Simms tract") on Route 208 in a rural section of Spotsylvania County. He acquired the property from his mother in 1975. His mother acquired the property from Simms's father upon the father's death in 1954. Simms's father purchased the tract in 1916. Thus, the property has been in Simms's immediate family for more than seventy years. During his father's lifetime, the open portions of the tract were farmed and grazed. More recently, some portions have been farmed.

All of the defendants are related to Simms by blood or marriage. They own parcels (collectively, the "Purnell tract") which adjoin the Simms tract on the north. Although they have not lived on their respective parcels as long as the Simms family has lived on the other tract, several of them are familiar with the properties and the history of the uses to which the properties have been put.

The northern boundary line of Simms's tract is essentially a straight line running from Route 208 westerly more than 1,700 feet, as shown by a plat dated November 3, 1986, made by Richard A. Harrison, admitted in evidence on plaintiff's exhibit # 1. A gravel road lies entirely within the boundaries of the Purnell tract, running parallel to the northern boundary line of the Simms tract. The road leads from Route 208 on the east to the property of others on the west.

Between the gravel road and the northern boundary line of the Simms tract is a variable-width strip, generally thirty feet wide.

The strip of land between the gravel road and Simms's northern boundary line is the subject of the adverse possession claim. The gravel road is the subject of the prescriptive easement claim.

The commissioner's recitation of the other pertinent facts (Report, pp. 3-5) is thorough, accurate, and concise and need not be repeated in detail.

### Pleadings

Simms instituted this litigation by bill of complaint in February, 1988. The defendants responded. On October 24, 1988, the matter was referred to the commissioner. The commissioner conducted a hearing on December 12, 1988. The testimony given at that hearing is contained in a 169-page transcript, with exhibits attached. The commissioner also conducted a view.

The commissioner filed his report on December 14, 1989. Simms filed exceptions to the report, and arguments on the exceptions were heard by the court on February 20, 1990.

### Adverse Possession

Simms claims adverse possession to the center of the gravel road. The commissioner concluded that "the facts do not support a finding of adverse possession to that point." At best, the commissioner reported, Simms established that he possessed "that land lying between the actual boundary line (i.e., the northern boundary line of the Simms tract) and the edge of his regularly

cultivated field . . . . The width of [that] strip is not ascertainable with certainty, but the grass has been maintained by a tractor and a bush hog . . . . Although plaintiff may have possessed a portion of the disputed strip of land, he has failed to prove his 'intention to claim title to the land itself up to a specific boundary line on the ground.' *Christian v. Bulbeck*, 120 Va. 74, 108 (1916)." (Report, pp. 7-8.)

Simms contends that the commissioner misapplied the principles in *Christian v. Bulbeck, supra.* He argues that he is not required, as the commissioner held, to prove that he intended to claim ownership of land which he knew was not his. Instead, he says, he is required to prove open, notorious, exclusive, and continuous possession for the statutory period, and he has done that by evidence of grazing and cultivation within the strip between 1916 and 1954, at which time such adverse use ripened into legal title.

*Christian v. Bulbeck* is a "mistaken boundary line" case. The author of this opinion has had occasion to analyze that case in another adverse possession dispute. *See Fortune v. Rich*, 13 Va. Cir. 59 (1987) (opinion dated December 2, 1987, pp. 4-7). *Christian v. Bulbeck* stands for the proposition that occupancy to a visible and ascertained boundary for the statutory period is the controlling factor in determining the element of "hostility" in such cases. The fact that the occupancy may have been under mistake or ignorance as to boundary lines is immaterial. A national publication cites *Christian v. Bulbeck* for the proposition that where an intention is manifested to claim title to a visible, fixed, and ascertained boundary line, the possession is hostile, although it is erroneously assumed to be the true line and possession is held and the claim is made because of the mistake as to the location of the boundary. *See* 3 Am. Jur. 2d, *Adverse Possession* § 60.

Simms misconstrues the purpose for which the commissioner cited *Christian v. Bulbeck.* The commissioner's report does not suggest that Simms's claim turns on the element of "hostility." Instead, he accurately cited the case for the proposition that an adverse possession claimant must show some intent, whether derived from mistake or an erroneous assumption or whatever, to occupy and claim title to some fixed, ascertainable point or location on

the ground. It is the commissioner's view, as the court interprets the report, that Simms failed to establish these rudimentary prerequisites.

A commissioner's report is not entitled to the same weight as a jury verdict. Virginia Code § 8.01-610. However, it is entitled to great respect; and where, as here, the evidence has been taken in the commissioner's presence, his findings of fact are presumptively correct and should not be arbitrarily disturbed. *Hill v. Hill*, 227 Va. 569 (1984).

Upon an independent review of all the evidence and the applicable legal principles, the court agrees with the commissioner.

Although Simms and his predecessors used the strip or portions of it for grazing and, at other times, for cultivation, the evidence is not sufficient to enable the court to determine with any particularity the location of the line to which Simms and his predecessors have claimed. Clearly, the evidence does not support Simms's claim to the center of the gravel road.

At some time, there was a fence. The fence ran basically parallel to the gravel road, about three-to-eight feet to the south of the road. Several cedar trees now stand where a stretch of the fence apparently was located. Simms's evidence indicates that the fence was erected by his father when he was grazing livestock on a portion of the Simms tract.

How does the existence of an old fence line located three to eight feet off the road prove title by adverse possession to the center of the road? When asked this precise question at the February 20th hearing, counsel for Simms responded that a landowner cannot run a fence down the center of a road. This explanation, a nonsequitur, adds no strength to Simms's claim to the center of the road.

Further, as noted above, the location of the fence cannot be determined with any precision. On that point, Simms testified as follows:

Q.   Were there fences on the land?
A.   Yeah.
Q.   Would you describe the fences that were in the area of this road . . . .?

A.  There was a fence went down beside the lane.

\* \* \*

Q.  Was that the only fence that was on that lane?
A.  No, there was one across the lane, too. There was two fences went down beside it.
Q.  And when you say there was one across the lane, you mean on the land that is presently on the Purnell side of the road?
A.  Yeah.
Q.  Do you know when those fences were put up?
A.  No.
Q.  Do you know when they were taken down?
A.  I took mine down sometime in the '50's after Daddy died.

\* \* \*

Q.  And what about the fence on the other side, was it still standing at that time?
A.  I don't remember whether it was or not.

\* \* \*

Q.  At present, there are some cedar trees growing along that road, are there not?
A.  Uh-huh.
Q.  Were those in the fence line at that time? Were they inside the fence, or do you remember?
A.  I don't remember, but it's about on the fence line, but I don't remember whether it was inside or out.

Transcript, pp. 31-36.

Therefore, it is the opinion of the court that Simms's evidence fails to establish adverse possession to the center of the road. Even assuming that Simms and his predecessors adversely occupied the strip to a fence line somewhere between the gravel road and the northern boundary of the Simms's tract, the evidence is too sketchy, and imprecise.

To establish title by adverse possession, it is necessary to show actual, hostile, exclusive, visible, and continuous possession for the statutory period of fifteen years. Virginia Code § 8.01-236; *McIntosh v. Chincoteague Volunteer Fire Dept.*, 220 Va. 553 (1979). "Actual" and "visible" are sometimes used interchangeably with, or in addition to, "open" and "notorious" in the cases.

To satisfy the requirements of adverse possession, the claimant must possess the land in such a way as to amount to an ouster of the true owner; *i.e.*, in such a manner as to give notice "that seisin is molested." *LaDue v. Currell*, 201 Va. 200 (1959).

It is also said that the claimant must establish use of or dominion over the land or such visible change in its character as amounts to a complete ouster of the superior record title. *See* 1A M.J., *Adverse Possession* sects. 4, 5, and 6.

Possession by enclosure, to be adverse, must be an actual occupancy which is definite, positive, and notorious. 1A M.J., *Adverse Possession* § 5. Here, the location and duration of the enclosure are unclear, and the limits of Simms's exclusive adverse occupancy are uncertain. Furthermore, it is not clear that the fences were intended as limits of occupancy or as boundary lines. Fences ran down *both* sides of the gravel road at one time. Thus, it is at least as plausible that the purpose of the fence was to keep everyone's livestock off the road, which leads to other properties off Route 208, and that no one had any intention that these fences would be used to delineate areas of occupancy or title boundaries.

In sum, Simms has failed to establish the line or the point to which he occupied the strip, or any portion of it, with sufficient clarity or precision; and, further he has failed to show that his possession, to whatever point it may have been, was of such character as to give rise to a legitimate claim of title by adverse possession.

### Prescriptive Easement

A claim of easement by prescription is analogous in most respects to a claim of title by adverse possession. The claimant must show that the use and enjoyment was

adverse, under a claim of right, exclusive, continuous, and with knowledge and acquiescence of the owner of the servient estate for at least twenty years. 6B M.J., *Easements* § 14.

The commissioner reported that the use by Simms and his predecessors of the gravel road, located on the defendants' property, was "intermittent and not continuous." In addition, the commissioner found that the use of the road was "permissive."

Upon a review of the evidence and the applicable legal principles, the court is of the opinion that the commissioner is correct. In short, Simms's evidence fails to establish the elements of a prescriptive easement. Accordingly, the commissioner's findings on this issue will be confirmed.

### Conclusion

For the reasons explained, the commissioner's report will be confirmed, and the relief sought in the bill of complaint will be denied.

The commissioner's fee is approved.

The costs of this proceeding, including the transcription of the evidence and the commissioner's fee, will be assessed against the plaintiff.