## CIRCUIT COURT OF THE CITY OF RICHMOND

Lawrence P. Hollister
and Barbara H. Hollister

v.

Pierce Arrow 4, L.L.C.

July 3, 2002

Case No. HS-266-4

BY JUDGE RANDALL G. JOHNSON

In this chancery action, the court is asked to decide whether plaintiffs, Lawrence and Barbara Hollister, have an easement over a walkway located on the property of the defendant, Pierce Arrow 4, L.L.C. The case was tried to the court, sitting without a jury, on June 27.

The parties own adjoining property on the eastern side of North Boulevard, a street that runs north and south in the City of Richmond. The Hollisters own 307 North Boulevard; Pierce Arrow owns 313-315 North Boulevard, which in spite of the missing numbers is the property immediately to the north of the Hollisters' property. Each parcel contains an apartment building inhabited by various tenants of the respective parties. Prior to January 2002, there was a walkway on the southern portion of Pierce Arrow's property, and almost abutting the Hollisters' property, that extended from a point beyond the front of the buildings to a point beyond the rear of the buildings, where there is a parking lot for the Hollisters' tenants and a parking lot for Pierce Arrow's tenants. Beyond the parking lots is an alley where tenants of both buildings place their garbage and trash for collection by the City. The Hollisters' claim of an easement relates to the walkway.

The evidence at trial was uncontroverted that for at least 34 years, the Hollisters' tenants and the tenants of the Hollisters' predecessors in title used the walkway to go to and from the parking lot and to take trash and garbage to the alley. The evidence was also uncontroverted that this was done with the full knowledge of Pierce Arrow and its predecessors in title. In fact, one of the Hollisters' predecessors put steps in the walkway, and the steps were improved by one of Pierce Arrow's predecessors. The Hollisters improved the walkway by putting down slate and concrete. There was also testimony that the walkway had been used by members of the general public as a shortcut to go back and forth between the Boulevard and points beyond the alley. One witness testified that this was a normal occurrence: "Everybody used it." Another witness testified that it only happened occasionally. The court finds that it happened more than occasionally. As with the Hollisters' tenants, there was no evidence that Pierce Arrow or its predecessors in title ever did anything to stop the general public from using the walkway until this year.

In January 2002, Pierce Arrow erected a permanent fence enclosing the walkway and blocking all access of the Hollisters, their tenants, and the general public to the walkway. Since then, Pierce Arrow has removed the slate and concrete and made other landscaping changes which prevent the subject portion of its property from being used as a walkway at all. The Hollisters seek a ruling that they have a prescriptive easement across what used to be the walkway. They also seek an injunction preventing Pierce Arrow from blocking them and their tenants from using such easement. No claim of a recorded easement or easement by necessity is made.

The Supreme Court of Virginia has very recently restated the law of the Commonwealth concerning easements by prescription. In *Martin v. Moore*, 263 Va. 640 (2002), which involved the use of what the Supreme Court and trial court variously called a roadway or driveway, the Court said:

> "The law applicable to establishment of prescriptive easements is settled. In order to establish a private right of way by prescription over property of another, the claimant must prove, by clear and convincing evidence, that the claimant's use of the roadway in question was adverse, under a claim of right, exclusive, continuous, uninterrupted, and with the knowledge and acquiescence of the owner of the land over which it passes, and that the use has continued for at least 20 years. *Ward v. Harper*, 234 Va. 68, 70, 360 S.E.2d 179, 181 (1987); *Pettus v. Keeling*, 232 Va. 483, 485, 486-87, 352 S.E.2d 321, 323-24 (1987). *Accord Nelson v. Davis*, 262 Va. 230, 235, 546 S.E.2d 712, 715 (2001).

When there has been open, visible, continuous, and unmolested use of a road across the property of another for the prescriptive period, the use will be presumed to be under a claim of right, and places upon the owner of the servient estate the burden to rebut this presumption by showing that the use was permissive and not under a claim of right. *Ward,* 234 Va. at 70-71, 360 S.E.2d at 181; *Pettus,* 232 Va. at 485, 352 S.E.2d at 323-24. *Accord Nelson,* 262 Va. at 235, 546 S.E.2d at 715. This presumption of a grant or adverse right is prima facie only and may be rebutted by evidence to the contrary. *Chaney v. Haynes,* 250 Va. 155, 159, 458 S.E.2d 451, 453 (1995).

As already noted, the evidence in the case-at-bar is uncontroverted that the use of the walkway by the Hollisters and the Hollisters' predecessors was continuous, uninterrupted, and with the knowledge and acquiescence of Pierce Arrow and Pierce Arrow's predecessors. In fact, Pierce Arrow concedes those facts. Pierce Arrow contends, however, that such use by the Hollisters and the Hollisters' predecessors has not been under a claim of right because (1) such use was with the permission of Pierce Arrow and Pierce Arrow's predecessors; and (2) such use has not been exclusive.

With regard to permission, that argument was also made in Martin. It was rejected. First, the Court discussed the evidence that showed that the owners of the subservient property, who were the defendants, were aware of the plaintiffs' use of the roadway and did nothing to stop it. The Court then said:

Accordingly, the plaintiffs were entitled to the rebuttable presumption that their use, and that of their predecessors in title, was adverse. The question then becomes whether the defendants proved that the use by the [plaintiffs' predecessor in title] and the plaintiffs was permissive, and not adverse.

*Circumstantial evidence may not be used to establish permissive use in cases involving joint driveways. There must be a positive showing that an agreement existed.*

263 Va. at 646 (*quoting Causey v. Lanigan,* 208 Va. 587, 593, 159 S.E.2d 655 (1968) (emphasis added).[1]

---

[1] The reference in *Martin* to "joint driveways" is of no moment. While *Causey v. Lanigan,* the case quoted in *Martin,* involved a joint driveway, the holding of that case was based on principles set out in *Craig v. Kennedy,* 202 Va. 654, 119 S.E.2d 320 (1961), which involved a road entirely on the property of another. In fact, the

The Court then went on to point out that while the owners of the subservient estate acquiesced in the plaintiffs' use of the roadway and that one of the defendants, Martin, even gave permission for plaintiffs' predecessor in title, Bryant, to pave it, the evidence was not sufficient to show that plaintiffs' predecessor's use, or plaintiffs' use, was with permission. Specifically, the Court said:

> The evidence established that the defendants acquiesced in the Bryants' and the plaintiffs' use of the joint entrance and joint driveway. But the evidence failed to rebut the presumption enjoyed by the plaintiffs that the prior use was adverse.
> "The chancellor found: "While Martin and Bryant did discuss maintenance of the roadway, and Bryant did get permission before he paved the driveway, there was never any discussion between Martin and Bryant regarding Bryant's use of the portion of the road on Martin[§s] property, therefore there was no agreement which would rebut the presumption that the use was adverse." These factual findings of no oral or written permission clearly are supported by the evidence.

263 Va. at 640.

In the case at bar, there was also evidence that Pierce Arrow and Pierce Arrow's predecessors acquiesced in plaintiffs' and plaintiffs' predecessors' use of the walkway. There was also evidence that plaintiffs and plaintiffs' predecessors made improvements to the walkway. As in Martin, however, there was no evidence of any discussion between the Hollisters or any of their predecessors with Pierce Arrow or any of its predecessors regarding the Hollisters' or anyone else's use of the walkway. And just as in Martin, the absence of such evidence means that there is no agreement which rebuts the presumption that the use was adverse. Accordingly, Pierce Arrow's argument that the subject use was permissive is rejected.

---

Court in *Causey v. Lanigan* specifically said: "As far as prescriptive rights are concerned, we find no compelling or valid reason to distinguish a driveway case involving properties of both adjoining landowners from a case where the roadway used is wholly on the property of another. In each case the easement sought is across property of another. Whether it be part of a driveway or all of it makes no difference." 208 Va. at 593.

Turning now to Pierce Arrow's argument that no easement exists because the Hollisters' and the Hollisters' predecessors' use of the walkway was not exclusive, the law of Virginia is set out in *Pettus v. Keeling*, one of the cases cited in Martin. After setting out the same elements and presumption applicable to prescriptive easements as are set out in Martin, the Court said:

> But where the use of a roadway by persons owning property in the immediate area has been in common with use of the way by members of the general public, the essential element of exclusiveness is lacking because the use of the way is dependent upon the enjoyment of similar rights by others, and no prescriptive right arises. *Burks Brothers of Va., Inc.*, 232 Va. at 246, 349 S.E.2d at 139. However, when each landowner asserts his own right, independent of all others, to use the way, and no rights are dependent "upon the common enjoyment of similar rights by others," prescriptive rights may arise. *Id.* This is because when each user independently asserts his right to enjoy the way for himself, "*such use is exclusive even though others assert similar rights for themselves.*" *Id.*; *Totten v. Stuart*, 143 Va. 201, 203-04, 129 S.E. 217, 218 (1925).

232 Va. at 486 (emphasis added).

In *Totten v. Stuart*, the term "exclusive" was discussed in even more detail:

> The use [is] "exclusive" when it is proprietary, not a use by the public generally, and is exercised under some claim which is independent of and does not depend for enjoyment upon similar rights of others. *It is not necessary, however, that the claimant be the only one to enjoy the right of way*, as other persons may acquire a prescriptive right to use it. When a way has been so used for a period of more than twenty years, the origin of the way not being shown, the *bona fides* of the claim of right is established and a presumption of a right to the use arises from the long acquiescence of the owner of the servient estate, and the burden is on him to rebut that presumption by showing permission or license from him or those under whom he claims.

143 Va. at 204 (emphasis added).

Based on the above, the court finds that the Hollisters' and their predecessors' use of the walkway was sufficiently exclusive to give the

Hollisters an easement by prescription. First, there is no evidence that the Hollisters' and their predecessors' use of the walkway was in any way dependent upon the general public's use of the walkway. The Hollisters and their predecessors did not use the walkway because the general public used it. In fact, their use of the walkway had nothing to do with the general public's use of it at all.

Second, the use of the walkway by the Hollisters and their predecessors was different from the use of the walkway by the general public. The Hollisters and their predecessors used the walkway as a convenience to their tenants in going to and from the parking lot and alley at the rear of the building. The only evidence regarding the use of the walkway by the general public was that it was used as a shortcut between the Boulevard and points beyond the parking lot and alley. There was no evidence that any of the Hollisters' tenants, or any of the tenants of their predecessors, ever used the walkway to go beyond the parking lot and alley.

Third, just as the Hollisters are entitled to a presumption of adverse use regarding permission, they are also entitled to a presumption of adverse use regarding exclusivity. *Totten, supra,* specifically holds that once the presumption arises, the burden is on the owner of the subservient estate to show that the claimant's use was by "permission or license." No such showing was made.

The cases cited by Pierce Arrow do not help its cause. With particular reference to *Wall v. Landman,* 152 Va. 889, 148 S.E. 779 (1929), that case held that "where the owner of land opens a way thereon for his own use and convenience, the mere use by his neighbor under circumstances which neither injures the way nor interferes with the owner's use of it, in the absence of some other circumstance indicating a claim of right, will not be considered as adverse, and will never ripen into a prescriptive right." 152 Va. at 895. As that case makes clear, however, that holding applies only where it is "fairly shown that the use is permissive in its inception." *Id.* No evidence was presented regarding the inception of the walkway's use.

*Callahan v. White,* 238 Va. 10, 381 S.E.2d 1 (1989), also does not apply. In that case, the claimed easement was "dependent upon the enjoyment of a similar right by" a third person. 238 Va. at 13. The Hollisters' claim is dependent only upon their predecessors in title. There is no need to discuss the remaining cases cited by Pierce Arrow.

The court finds that the Hollisters have a prescriptive easement over Pierce Arrow's property that consisted of the walkway that was destroyed by

Pierce Arrow sometime after January 2002. They are entitled to a judgment to that effect and an injunction preventing Pierce Arrow and their successors in title from interfering with it.