## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Roderick A. Lloyd et al.

    v.

Betty L. Purnell et al.

April 18, 2003

Case No. CH00-713

BY JUDGE WILLIAM H. LEDBETTER, JR.

The width of a private road and its proper use are the issues in this litigation.

### *Facts*

The plaintiffs, the Lloyds, own and live on a 35-acre tract of land located about four-tenths of a mile off Route 208 in the Bethel Church area of the County. The Lloyds acquired the property from Mr. Lloyd's father, who had purchased it and built a house on it around 1897. As access, Mr. Lloyd's father had created a road, the subject of this dispute, from Route 208 to his house.

The primary defendants, the Purnells and the Haiglers, live on parcels located along the road between Route 208 and the Lloyd tract. Mrs. Purnell is related to Mr. Lloyd. The Haiglers live on a parcel that they purchased from another Lloyd relative. Most of the witnesses who presented evidence in this case are Lloyds. Thus, in many respects, this is a "family" dispute.

The other two defendants are the noteholder and trustee under a deed of trust that encumbers the Haigler parcel.

For a number of years, the parties have squabbled about the nature, the width, and the use of the road. The Lloyds contend that the Purnells and Haiglers have obstructed the road in a variety of ways and have harassed guests and other persons travelling the road to visit them. The Purnells and Haiglers say that the Lloyds and their guests abuse their privilege to use the road, failing to keep their vehicles within the gravel portion of the road, and driving recklessly along it. Apparently, at some point, a question arose as to whether the Lloyds had a legitimate right to use the road at all, but that is not a serious issue in this litigation.

The Lloyds instituted this suit in October 2000 to establish their right to use the road by prescriptive easement, to establish the width of the road at fifteen feet, and to enjoin the Purnells and the Haiglers from interfering with their use of the road.

All defendants responded. The Purnells and the Haiglers filed a cross-bill to enjoin the Lloyds from using the road because the abusive manner of their use has allegedly created a hazardous nuisance.

In March of 2003, the parties agreed to submit the case for decision based upon (1) discovery depositions taken on June 14, 2001, (2) fourteen stipulated exhibits, and (3) memoranda filed by counsel. This opinion reflects the decision of the court based on those submissions.[1]

## Prescriptive Easement

One of the most common forms of easement is the right of way, or private way, defined as an interest in another person's land for the specific purpose of crossing it or travelling over it. Usually, as here, it is used as access to a public road. The land benefitting from the right of way is called the dominant estate. The land burdened or encumbered by the right of way is called the servient estate.

A right of way can be created by "prescription." Where a way has been used openly, uninterruptedly, continuously, and exclusively for a period of more than twenty years, the origin of the way not being shown, it is presumed

---

[1] Coincidentally, this is not the first time this road has been the subject of litigation. In *Simms v. Purnell*, 19 Va. Cir. 138 (1990), this court held that Simms, a landowner across the gravel road from the Purnells, did not have a prescriptive easement to use the road. The Lloyds were not involved in that litigation, and that adjudication has no bearing on this dispute.

that an easement was granted from the long acquiescence of the parties upon whose land the way is located. The presumption arises only upon clear proof of the elements mentioned above. However, once the presumption has been triggered by proof, it is up to the owner of the servient estate to show that the use was permissive only or otherwise not under a claim of right. *Craig v. Kennedy*, 202 Va. 654, 119 S.E.2d 320 (1961); *Causey v. Lanigan*, 208 Va. 587, 159 S.E.2d 655 (1968); *Pettus v. Keeling*, 232 Va. 483, 352 S.E.2d 321 (1987); *Martin v. Moore*, 263 Va. 640, 561 S.E.2d 672 (2002). Also see 14B M.J., *Private Ways*, § 10.

Each of the elements of a prescriptive easement, enumerated above, has its own history and its own set of definitional rules. A lengthy discourse on the principles of prescription is not necessary because the evidence clearly and convincingly shows that the Lloyds are beneficiaries of a prescriptive easement along the private way that runs from Route 208 to their tract, traversing the lands of the defendants. Further, it is apparent that the defendants now concede that fact. Therefore, the focus will turn to the real controversies: the width of the easement and the proper use of the easement.

## Width

When an easement by prescription has been established, its width (the extent of the servitude) is governed by the character of the use during the prescriptive period. *Pettus v. Keeling, supra*; *Willis v. Magette*, 254 Va. 198, 491 S.E.2d 735 (1997). While a reasonable increase in the degree of use may be permissible in such an easement, an increase in its size, i.e., its width, to envelop additional servient land is not allowed. *Willis v. Magette, supra.*

Here, the evidence shows that the way actually is eight to twelve feet wide along its span. A couple of references to it in the land records treat it as twelve feet wide. Except for several times when a combine traversed the road, it appears that the use of the road did not extend beyond, at most, twelve feet in width.

The Lloyds argue that their evidence establishes a fifteen-foot width, based on the comings and goings of the combine. While they seem to concede that no other vehicles or machinery ever exceeded the eight to twelve foot width of gravel along the way, they point to the regular passage of the combine as creating a wider way.

The court does not interpret the evidence as the Lloyds argue. During the period of prescription, the passage of vehicular traffic stayed within the eight to twelve foot gravel portion. The combine traversed the road only several times, not regularly, and when it did, its sides extended outside the

gravel way to a width of about fifteen feet. For the last ten years, fence posts have been located on the Purnells' property in such a way as to make the road less than fifteen feet wide. Large trees are shown on photographs of the road, admitted as evidence by stipulation, which also have the effect of limiting the width of the road. The gravel, or travelled, portion of the road is clearly shown in the photographs.

Accordingly, the court is of the opinion that the easement is twelve feet wide.

For this reason, the fence and trees on the servient land are not obstructions and need not be removed.

## Use

The nature of an easement's use is determined by the purpose for which it was created. If the easement was created expressly in a writing, this task is usually easy. If the easement was created by prescription, its proper use is determined by reference to its use during the prescriptive period.

This right of way obviously was created for vehicular passage to provide access to the Lloyd tract from Route 208. The way is located along a span that is clearly ascertainable on the ground and has been for more than a hundred years. To assist the passage of vehicles on this way, gravel has been spread along it at widths ranging from eight to twelve feet; it has been graded and maintained; and it has been in continuous use. Thus, there is little question that the way is intended as a vehicular private way, a private road, for the benefit of the Lloyd tract, and today this court has determined that the width of the road is twelve feet.

The law is well settled that persons who own the servient land, the land over which the road passes, cannot interfere or obstruct its use. Although they, too, are entitled to use the road because they own the land beneath it, they must use it in a manner consistent with the rights of the owner of the easement, and they cannot make the way less useful or less convenient.

Generally, interference is accomplished by obstructions, such as gates, piles of rocks, etc., that prevent or impede passage. Here, the interference takes the form of harassment: gesturing, shouting, stopping travellers to admonish them about their speed or to inquire as to their destination. These are impediments that may amount to trivial nuisances or they may be enjoinable violations of the easement owners' rights, depending on each particular episode. For this reason, the court will do no more, at least, at this juncture, than direct that the final order contain a provision prohibiting the

defendants from obstructing or interfering with the proper use of this right of way.

The Purnells and the Haiglers have attempted to enforce a speed limit of 5 m.p.h. on the road, and they have erected signs to that effect. The owners of the servient land are not the arbiters of how an easement owner uses the easement. There is no evidence that justifies such a snail-pace speed limit along this way. It is not in a congested area. It is not a rutted lane. The easement is a twelve-foot wide graveled road that can easily accommodate travel at normally-recognized speeds.

On the other hand, the Lloyds are admonished to use the road for its intended purpose, within the physical bounds established here, and in a reasonable and proper manner so as not to interfere with the rights of the owners of the servient parcels. Although rarely done, a court of equity may enjoin altogether the use of an easement if the owner of the easement systematically abuses it, especially after being directed by a court to cease such abuse. The Lloyds and their invitees should use this way for vehicular passage in a manner that is not reckless and inconsiderate of the landowners' rights.

No injunctive relief will be granted, for the reasons stated, but the admonitions discussed above should be placed in the order.