## CIRCUIT COURT OF NELSON COUNTY

Lee H. Albright et al.

v.

Robert J. Sheipe,
executor,
and Frederick J. Sheipe, Jr.

November 7, 2011

Case No. CL11000100-00

By Judge J. Michael Gamble

I am writing to furnish the decision in this case. In this regard, I find that the plaintiffs have established a right-of-way by prescription over Lot 17 of Spy Rock Subdivision, Phase II, owned by the defendants.

Under the facts of this case, the plaintiffs are owners of 222.07 acres in the Montebello area of Nelson County, Virginia. The defendants own an adjacent parcel containing 24.55 acres designated as Lot 17 in Spy Rock Subdivision, Phase II. The plaintiffs filed their complaint to establish a right-of-way for ingress and egress over the "Old Road" shown on the plats admitted as Plaintiffs' Exhibits ## 5 and 6.

The evidence established that the plaintiffs acquired their land in 1987. The defendants received Lot 17 through the will of Ruth Z. Sheipe. Ruth Z. Sheipe and her husband acquired Lot 17 in 1991. Frederick J. Sheipe, Jr., one of the defendants, frequently visited Lot 17 during the life of his parents.

At the time the plaintiffs acquired the 222.07 acres, they were also granted a fifty foot wide deeded right-of-way over Lots 6, 8, and 17 of the Spy Rock Subdivision. The fifty foot wide deeded right-of-way passed over the northwestern corner of Lot 17. It was granted by Jonathan A. McGraw and wife, a predecessor in title to the defendants. Additionally, in the deed of the 222.07 acres to the plaintiffs a non-exclusive right-of-way was granted along "the old railroad grade to Virginia State Route 686."

Even though the plaintiffs have two deeded rights-of-ways to their 222.07 acres, they assert that due to the terrain they cannot practically obtain access to approximately 25 percent of their property unless they use The Old Road crossing Lot 17. Further, the plaintiffs assert in their evidence that The Old Road crossing Lot 17 has been in existence over 100 years.

After the plaintiffs acquired the property in 1987, they used The Old Road across Lot 17 occasionally. Most of the use was to obtain firewood. Around 1992, the Sheipe family installed gates on the right-of-way. At times, the plaintiffs would try to go through and were blocked by the gates, and at times the gates would be left open and the plaintiffs passed through to their 222.07 acres. Under the evidence, it appears that in 2010 access across Lot 17 on The Old Road to the 222.07 acres was blocked completely. The evidence established that some of the reasons for the disagreement of the parties around this time was based on a request by the plaintiffs to put an electrical easement on The Old Road and a complaint by the plaintiffs that the defendants did not have a proper septic system on the property.

The most knowledgeable witness about the history of The Old Road was Mary Frances Mizer, who had spent her childhood on a portion of the property now owned by the plaintiffs. The testimony of Ms. Mizer was presented by deposition. She testified that she was born on the property in 1916. She lived there until 1936 and would come back periodically to visit. Initially, her family lived in the big house on what was called the "Dan Place." When the big house burned, they moved to a little house near the site of the big house. She said that the name of the location where she lived was "the Dan Place." Further, she testified several times in her deposition that the disputed road was the only road to the Dan Place during the time she lived on the property. She further identified this road on the topographical maps that were attached as Exhibits 1 and 2 to her deposition. Further, even though she moved off the Dan Place in 1936, she continued to visit her sister and use the same road. Her sister died in 1987.

The South River Lumber Company acquired the real estate from which Lot 17 was developed in the 1920s. They held title to the property until the 1950s. The father of Mary Frances Mizer was an employee of The South River Lumber Company, who helped build the railroad beds that served The South River Lumber Company operations. I infer from that testimony that the family either rented the property from The South River Lumber Company or was allowed to live on it because her father was an employee.

Also, it appears through the chain of title that the father and mother of Mary Frances Mizer had a sufficient interest to be involved in the chain of title prior to the time that the property was purchased by The South River Lumber Company. Her father and mother were grantors in the deed dated September 12, 1921, recorded at Deed Book 47, page 401, that conveyed part of the tract to The South River Lumber Company. Also, her father was a grantor in an earlier deed recorded at Deed Book 41, page 447,

that conveyed another portion to a predecessor in title and was eventually conveyed to The South River Lumber Company. As a result of these transactions, it is clear that her family had had an interest in the property from which Lot 17 was derived prior to the time that it was conveyed to The South River Lumber Company.

In order to establish a prescriptive easement, the plaintiffs must prove by clear and convincing evidence that the use of the easement was adverse, under claim of right, exclusive, continuous, uninterrupted, and with the knowledge and acquiescence of the owner of the land over which it passes, and that the use continued for at least twenty years. *Johnson v. Debusk Farm, Inc.*, 272 Va. 726, 730, 636 S.E.2d 388, 390-91 (2006). I find that the plaintiffs have met the burden of proof to establish a prescriptive easement over Lot 17. I will discuss the elements below.

Testimony of Ms. Mizer established that the use was adverse, exclusive, continuous, uninterrupted, and with the knowledge and acquiescence of the owner. As noted above, she said it was the only access into the property, and she said it was the only road that was used. This use occurred from 1916 until beyond 1936, a period of more than twenty years. The use she described was so open and continuous that it was clearly adverse, exclusive, and with the knowledge of the owner. This is certainly confirmed by the photographs that show a well-established road. Also, she testified that there were no interruptions with the use of the road.

When there has been open, visible, continuous, and unmolested use of a road for at least twenty years, the use is presumed to be under a claim of right. As I have discussed above, the use was open, visible, continuous, and unmolested. Also, Ms. Mizer testified about use from 1916 until well beyond 1936. This satisfies the requirement that the use be for at least twenty years. See *Pettus v. Keeling*, 232 Va. 483, 485, 352 S.E.2d 321, 323-24 (1987).

The defendants argue that the plaintiffs have not linked the general historical use of this right-of-way to predecessors in title. See *Mulford v. Walnut Hill Farm Group, L.L.C.*, 282 Va. 98, 712 S.E.2d 468 (2011). In the instant case, however, I find that the testimony of Ms. Mizer was sufficient to establish that her family were lawful tenants on the property sufficient to establish use on behalf of the owners.

Next, I find that the width of the easement is limited to twenty feet. The type of use that establishes the prescriptive right-of-way in this case is residential use. The photographs indicate that this easement is approximately twenty feet in width. Further, the court finds that this is a reasonable width for residential use.

Plaintiffs filed a counterclaim seeking damages for trespass. However, none of the damages sought by the plaintiffs result from any harm or injury to the real estate. Accordingly, I find that they are not recoverable in a trespass action, and the counterclaim is accordingly dismissed.

Last, I grant an injunction that enjoins the defendants from blocking the access of the plaintiffs over the road created by the prescriptive easement. This includes placing locks on gates, digging holes in the road, and putting other obstructions in the road.