ERVIN L. ELLSWORTH, Appellant, v. ELLA MARTIN et al., Appellees.

No. 38768.

MAY 7, 1929.

*Kimball, Peterson, Smith & Peterson,* for appellant.

*H. P. Finerty* and *D. E. Stuart,* for Ella Martin and David R. Martin, appellees.

*Tinley, Mitchell, Ross & Mitchell,* for Jens C. Anderson, appellee.

FAVILLE, J.—We shall refer to defendant Martin as the appellee. The appellant and the appellee are owners of adjoining properties in the city of Council Bluffs. Said properties abut upon Sixth Avenue, which extends east and west. Appellant's property is known as No. 1112, and appellee's property as No. 1124. The properties are on the north side of the street, facing south on Sixth Avenue. Appellant's property lies east of that of the appellee. The case involves the right to the use of a driveway, which extends north from Sixth Avenue between the houses of the said parties. There is a sidewalk running north and south on the east side of the appellee's house, about 2 feet in width. At the front of appellee's house, it is 8 feet 1 inch from the house to the east line of the lot. From the east line of the sidewalk between the properties, it is 2 feet and 7 inches to the east line of the appellee's lot. There is a cement curb extending north and south on appellant's lot, which forms the eastern border of the driveway in question; and this leaves in the neighborhood of 2 feet of appellant's lot that is in the driveway in question. The accompanying photo will aid in an understanding of the situation.

As to appellee's property, the house was built thereon about the year 1899. At that time, the appellant's house had not been constructed, and the lots lying east of the appellee's premises were open. One Bunting owned the appellee's property from 1899 until 1914, when he sold it to the appellee Anderson. Bunting lived in the property from 1899 until 1903, when he seems to have moved away, and returned to the property in 1912, and remained there until 1914. He constructed the barn upon the rear of the lot about the year 1900. The barn had an opening to the south, and no opening upon the alley to the north. While

Bunting occupied the property, he used the barn, and drove from Sixth Avenue along the driveway in question, immediately east of his house. There was no approach to the driveway at that time, and no cinders upon it; and about 1912, Bunting spread cinders upon the driveway. Sixth Avenue was paved about 1904 or 1905. The approach to the driveway was built about 1912, when the sidewalk was put in. During the time that Bunting

owned the property and lived therein, he used the driveway continuously as a means of entrance to and exit from the barn upon his lot, and also for delivering coal at his home, and for similar purposes. After Anderson acquired the property, in 1914, he leased it to different parties, who occupied the same, and who used the driveway in the same general manner. During part of the time, Anderson placed some cinders on the driveway. In 1919, Anderson sold the property, under contract, which was assigned to the appellee Martin on May 15, 1920; and Martin went into possession on June 8, 1920, and still remains in possession.

As to appellant's property, it appears that the house was constructed during the fall of 1914. The appellant purchased the property about 1918. From the time that appellant's house was constructed, in 1914, until the commencement of this action,

the driveway was used by the appellant and his predecessors in the ownership.

Appellant built a garage in the rear of his lot immediately after he purchased the property. The door to this garage opens to the south, and the only route of passage between the garage and the street was over the driveway. Appellant and appellee both used the driveway, as the only means of access to the rear of their properties from the street. Appellant constructed a curb along the east side of the driveway, to prevent the cinders from getting into his lawn. Appellant offered evidence tending to show that, about two years prior to the trial, there was a conversation between appellant and appellee with regard to said driveway. Regarding this, the appellant claims that at said time it was agreed between the appellant and the appellee that appellant should furnish the cinders for the repair and reconstruction of the driveway, and that the appellee would do the work and remove the cinders that were in the driveway, and replace them with new cinders, properly tamped. It is the appellant's contention that the appellee, at the time, said, in effect, that, by such an arrangement, "We would have a good permanent driveway." This arrangement was carried out; the appellant purchased the cinders, and the appellee placed them on the driveway in proper condition, and tamped them in. Several days were required, to do the work. It is also contended that subsequently, when all of the parties were present, the appellee Martin stated, "We have a good permanent driveway now." The appellant is corroborated in his contention with regard to the construction of the driveway and the conversations in relation thereto. It is the appellee's contention that, while the driveway was repaired in the manner claimed by the appellant, the same was not done for the purpose of constructing a permanent driveway, but was for the purpose of keeping the water from seeping into the cellars of the parties.

The evidence establishes use of the driveway by the appellee and his grantors continuously for about 22 years, and by the appellant and his grantors for about 12 years. That mere permissive use of another's property does not ripen into an easement is the statutory rule in this state. Section 10175, Code of 1927. We have recognized it in many decisions. We have declared that, in order to establish a prescriptive right to a driveway over

the property of another, it is essential that the claimant of such prescriptive right must show a claim of right on his part and notice of such claim to the other party. *Manning v. George,* 205 Iowa 994; *Black v. Whitacre,* 206 Iowa 1084; *Molene v. Tansey,* 203 Iowa 992. This is the well established rule.

If mere permissive use, even for a long period of time, were all that is involved in this case, such permission would be revocable, and no right would be created by such use, even with permission. But we think the record disclosed much more than mere permissive use in this case. We have the continuous mutual use of the driveway by the adjacent landowners and their grantees for a long period of years, and with full knowledge of such use. We also have both property owners erecting buildings for the obvious and necessitous use of said driveway mutually. One landowner erected a barn, and the other a garage, with no means of access thereto except over said driveway, and with full knowledge on the part of each of what was done. The paving and curb were constructed with an approach partly upon each lot, and such approach would have been wholly useless and unnecessary if there were no driveway on the properties.

We have read and reread the record with great care. We are convinced from the record that it was the understanding and agreement between the parties that the driveway should be repaired by their mutual contributions, for the purpose of making a permanent driveway for the mutual use and convenience of the parties. This agreement between the parties, which was performed in the manner indicated, together with all the other facts and circumstances of the case, as shown by the record, is sufficient, we think, to bring the case within the rule recognized in *Molene v. Tansey,* supra. The appellant established more than a mere permissive use or revocable license. The appellant has a right to use and enjoy the driveway in question as a "permanent driveway," constructed by the parties for their mutual use and benefit, in which they have reciprocal and equal rights. It follows that the decree of the trial court was erroneous, and it is, therefore,—*Reversed.*

ALBERT, C. J., and EVANS, KINDIG, and GRIMM, JJ., concur.