HOPKINS *v.* PARKER.

1. EASEMENTS—PRESCRIPTIVE USER FOR DRIVEWAY PURPOSES.

   A prescriptive easement may be acquired by adverse user for 15 years.

2. SAME—DRIVEWAY—PRESCRIPTIVE USER.

   In suit in which defendant asserted right to use of driveway, located on lot line, by virtue of an adverse user, such right must be established as having been perfected by the time of erection of fence on lot line by plaintiffs, which defendant removed and thereupon obtained a temporary injunction restraining plaintiffs herein from interfering with his use of the driveway.

3. SAME—DRIVEWAY—ADVERSE USER—BURDEN OF PROOF.

   In suit to enjoin defendant's use of part of plaintiffs' lot for a driveway, where the lot line was not in dispute and defendant claimed easement for driveway purposes by virtue of adverse user, defendant had the burden of establishing his claimed easement by such user.

4. SAME—PRESCRIPTIVE PERIOD—ADVERSE USER—DRIVEWAY.

   A prescriptive easement does not arise out of a mutual use of a driveway until mutuality ends and adverse user commences and continues for the period essential to the fastening of such a right.

5. SAME—PERMISSIVE USER.

   If the user of a driveway was permissive at its inception, such permissive character will continue of the same nature and no adverse user can arise until there is a distinct and positive assertion of a right hostile to the owner and brought home to him.

6. SAME—ADVERSE USER—EVIDENCE.

   Evidence of adverse user so as to give prescriptive right to the use of a driveway must be clear.

7. SAME—ADVERSE USER—PRESUMPTION OF GRANT—OFFER TO TREAT FOR USER.

   If it appears that during the time or after the time of claimed adverse user the party claiming right by prescription negotiates or offers to treat for user, then the presumption of a grant back of every easement by prescription fails.

8. SAME—DRIVEWAY—PRESCRIPTIVE RIGHTS—PERMISSIVE USER.
   In suit to enjoin use of part of plaintiffs' premises for driveway in which defendant claimed prescriptive right by virtue of alleged adverse user, where evidence shows that driveway originated as a convenience common to the needs of both properties and without thought on part of the users to any claim of exclusive right thereto, no prescriptive easement by defendant existed.

Appeal from Oakland; Doty (Frank L.), J. Submitted November 1, 1940. (Docket No. 138, Calendar No. 40,878.) Decided February 7, 1941.

Bill by George W. Hopkins and wife against Frank C. Parker to enjoin use of a driveway. Cross bill claiming easement. From decree for defendant, plaintiff appeals. Reversed, and decree ordered entered for plaintiff.

*Donald C. Porritt,* for plaintiffs.

*Hicks & DesJardins,* for defendant.

WIEST, J. Plaintiffs filed the bill herein to enjoin defendant from using a part of their premises as a driveway. Defendant, by answer, claims a prescriptive easement for such user. Upon hearing, the circuit judge found the easement established by adverse user, and plaintiffs review by appeal.

Plaintiffs own the south 41 feet of a 60-foot lot in the city of Pontiac, and defendant owns the north 19 feet and land to the north thereof.

It is settled in this jurisdiction that such an easement may be acquired by adverse user for 15 years. The question is whether the proofs established such an adverse user. Defendant's user was not peaceful and uninterrupted to the time the bill herein was filed.

In his answer in the nature of a cross bill, defendant alleges that in 1934 plaintiffs built a fence on the lot line and that prevented use of the driveway by him and, upon advice of counsel, he removed the fence, filed a bill and, in 1934, obtained a temporary injunction restraining plaintiffs herein from interfering with his use of the driveway. That case was not brought to a hearing and, in February, 1937, was dismissed for want of prosecution. Under such allegation the issue is whether defendant acquired a prescriptive easement by adverse user prior to the time plaintiffs erected the fence in 1934.

The line between the premises not being in dispute the burden was on defendant to establish his claimed easement by adverse user.

Defendant acquired title to his part of the lot by deed from Emma E. Hayward, dated February 11, 1910. Almira Parker Whitlock, mother of defendant, and her then husband, James H. Parker, acquired title to that part of the lot now owned by plaintiffs by deed from Emma E. Hayward, dated April 19, 1912, but did not occupy the premises. James H. Parker, father of defendant, died, and in August, 1917, defendant's mother married Joshua Whitlock and they lived on the premises. In July, 1920, defendant's mother, by quitclaim deed, granted to her husband, Joshua Whitlock, a life estate in the premises:

"From and after the death of first party; that is, first party reserves possession and control of the premises for and during her natural life.

"At her death, second party shall have a life estate in said premises for and during the term of his natural life and shall enjoy the possession, rents, profits and income arising from said property during the balance of his life."

Almira Parker Whitlock died in 1921 and until her death defendant looked after the renting of his mother's property. Joshua Whitlock occupied the now Hopkins premises until his death in July, 1928. At the death of Mr. Whitlock the now Hopkins premises passed into the hands of the Pontiac Trust Company, as administrator of the Almira Parker Whitlock estate. October 8, 1929, the Pontiac Trust Company, as such administrator, by deed authorized by the probate court, conveyed the premises to plaintiffs herein. The administrator had possession of the premises from the death of Mr. Whitlock until the deed to plaintiffs. Plaintiffs and defendant trace their respective ownerships to Emma E. Hayward, who was the owner of both premises in February, 1910.

Defendant testified on cross-examination:

"*Q.* Did you ever have any difficulty with your mother or your stepfather while they were living in this property?

"*A.* No, sir, I never had any trouble with my mother anyhow and the old gentleman and I always got along fine. * * *

"*Q.* They never made any objection to driving across the corner of this lot, did they?

"*A.* No, sir. Never a word mentioned about it.

"*Q.* You never said anything to them that you were claiming an interest in this south 41 feet, did you?

"*A.* It was never mentioned."

He also testified:

"When Mr. Hopkins first came on the property I could see right off he was dissatisfied with me using the driveway. I told him I would do anything not to have any trouble over the driveway. He let

me use it the rest of the time. He didn't give me any definite time I could use it, it was just a temporary time. On one occasion I talked with Mrs. Hopkins about purchasing a piece on the south side of their lot for driveway purposes. That was so I could use the piece on the north side of their property where the driveway is now."

Mrs. Hopkins testified:

"I had a conversation with Mr. Parker about the use of the driveway shortly after we bought the property and moved there. The conversation took place at my place but I can't put any date to it. It wasn't as much as a year after that. We hadn't got nicely settled when he came over. He said if I would go down to Mr. Hoxie and see if I could buy some land of him for us, then we would have to deed him some on that side of his driveway so we would both have a driveway, and I went down to see Mr. Hoxie. Mr. Hoxie did not sell us any property on the south side of our house. Mr. Parker said that if we got the Hoxie property he would pay us for our land on the driveway. We would both have a driveway."

It is evident that this driveway originated as a convenience common to the needs of both properties and without thought on the part of the users of any claim of exclusive right thereto. We are unable to discover any change in such mutual user. A prescriptive easement does not arise out of a mutual use of a driveway until mutuality ends and adverse user commences and continues for the period essential to the fastening of such a right. If the user was permissive at inception, such permissive character will continue of the same nature and no adverse user can arise until there is a distinct and positive assertion of a right hostile to the owner and brought home to him. 9 R. C. L. p. 778; *Village of Manchester* v. *Blaess,* 258 Mich. 652.

Under defendant's testimony it is not conceivable that during the time his mother and stepfather occupied the Hopkins premises he was asserting or even had the thought of adverse user of the driveway. Evidence of adverse user must be clear. If it appears that during the time or after the time of claimed adverse user the party claiming right by prescription negotiates or offers to treat for user, then the presumption of a grant back of every easement by prescription fails. 9 R. C. L. p. 782; *Outhwaite* v. *Foote,* 240 Mich. 327. The proofs do not establish a prescriptive easement.

The decree in the circuit court is reversed, and a decree will be entered in this court permanently restraining defendant from interfering with plaintiffs' exclusive right to their premises.

Plaintiffs will recover costs.

SHARPE, C. J., and BUSHNELL, BOYLES, CHANDLER, NORTH, MCALLISTER, and BUTZEL, JJ., concurred.