## Richmond

### Dorothy Ann Causey v. L. Mae Lanigan.

March 4, 1968.

Record No. 6566.

Present, All the Justices.

*Miles Cary, Jr. (Hirschler and Fleischer,* on brief), for appellant.

*Lewis T. Booker (Hunton, Williams, Gay, Powell & Gibson,* on brief), for appellee.

Snead, J., delivered the opinion of the court.

Dorothy Ann Causey, complainant, appealed from an adverse decree entered by the court below in which it was determined that she had not established an easement, by "prescription or otherwise," across the property owned by L. Mae Lanigan, defendant.

In her bill of complaint, Mrs. Causey alleged, *inter alia,* that she was the owner of a parcel of real estate with improvements thereon, designated as 1219 Wilmer avenue, in Henrico county; that Miss Lanigan, the defendant, was the owner of land with improvements thereon adjoining complainant's property on the west, known as 1221 Wilmer avenue; that in 1925 William H. Kelley, a predecessor in title, "installed the existing driveway" along the boundary line

between the properties and situated on both parcels with "the acquiescence and knowledge" of Clarence J. Kelley and his wife, defendant's predecessors in title, and that the use of the driveway by complainant and her predecessors in title has been "continuous, uninterrupted, adverse, hostile, notorious, and exclusive for more than 20 years next last past with full knowledge and acquiesence of the defendant and her predecessors in title."

The complainant further alleged that she had acquired an easement by prescription in that portion of the driveway situated on defendant's land, and that the erection of a fence along the boundary line by defendant had closed the driveway and prevented her from further use of it. In her prayer, complainant asked that defendant be required to remove the fence and restore the driveway to its previous condition; that defendant be enjoined from "doing any act which may interfere with the free enjoyment and use" of the driveway, and that it be decreed that complainant had acquired by prescription a right to the continued use of the driveway.

The defendant filed a demurrer to the bill and it was overruled. Within the prescribed time defendant filed her answer denying, among other things, that the complainant had acquired an easement by prescription on her portion of the driveway. She asserted that the use of the driveway was by "permission and license" of each owner to the other, and that the fence was erected along the boundary line upon the "suggestion, insistence and acquiescence of plaintiff, by her duly authorized agent."

The evidence was heard *ore tenus* and consisted of the testimony of Mrs. Causey, the complainant, C. W. Guthrie, the complainant's father, Miss Lanigan, the defendant, and Ernest M. Kelley, Jr., a predecessor in title to defendant's property. Their testimony may be summarized as follows:

In the fall of 1945 C. W. Guthrie, his wife and seven children moved to 1219 Wilmer avenue. The property was purchased in the name of Mrs. Guthrie and she later died intestate. In September 1964, Guthrie and the children conveyed their respective interests in the property to Mrs. Causey, the oldest child. Mrs. Causey had moved from the premises in September 1953, when she married. Guthrie had "control of the property" and resided with one of his sons at the premises when this case was heard. When the family moved to 1219 Wilmer avenue in 1945 there was a narrow dirt driveway with some gravel on it between 1219 and 1221 Wilmer avenue, and it has remained in substantially the same condition. The boundary

line separating the two parcels is approximately in the center of the driveway and extends from Wilmer avenue in a southward direction approximately 150 feet. There were two garages in the rear of the properties and the one on Mrs. Causey's parcel was razed in 1960 because of termites.

Miss Lanigan, the defendant, purchased 1221 Wilmer avenue in 1961 from Ernest M. Kelley, Jr., who had lived there continuously from his birth in 1932 until 1959. According to Kelley, the driveway was in existence before his birth.

Until Miss Lanigan caused a fence to be erected along the boundary line separating the two parcels of land in March 1965, the driveway was used by the owners of both parcels, their friends, occupants and business invitees, but it was not open to the public. No objections were ever made by any of the owners of either parcel to such use of the driveway. None of the witnesses knew of the existence of any agreement, written or oral, that governed the use of the driveway.

The evidence is conflicting as to what transpired between Miss Lanigan and Guthrie pertaining to the erection of the boundary line fence. Miss Lanigan testified that Guthrie told her in September 1964, that he planned to sell the property (1219 Wilmer avenue) and that he had to make repairs to the corner of the property by the driveway in order to obtain a higher FHA appraisal. She stated that he "indicated that he was going to put a wall on this corner and I showed him the line and told him that was where the wall * * * should be but not to come on my side and not to move the pin." On another occasion, she said Guthrie told her that "he was willing to do anything I wanted to do even to closing the driveway. I told him I would like to sleep on it." Shortly thereafter Miss Lanigan informed Guthrie that she "was agreeable to closing the driveway and he could proceed with his work".

Miss Lanigan further testified that she relied upon the understanding she had with Guthrie, and in March 1965, she employed persons at considerable expense to move her shrubbery up to the property line, cut a new driveway, and to erect the fence along the line. During the night of March 13, the fence was knocked down. According to Miss Lanigan, Eddie Guthrie, son of C. W. Guthrie, admitted doing the act.

C. W. Guthrie testified that he did not authorize Miss Lanigan to move the fence to the boundary line. He said: "I never had any idea the fence would be moved until I came home and found it in

the middle of the driveway. It was done on a Saturday and no one was around." On cross-examination Guthrie was asked whether he recalled a conversation with Miss Lanigan about the driveway in the fall of 1964. He replied: "I do not recall, it could have been. I do not recall the details what we did". Then he stated: "Well, the only conversation that I could tell you was one day when my sons were putting up this straightened edge, or ragged edge, when Miss Lanigan came up and said why don't you close it all, and I thought she was joking."

The complainant makes three assignments of error. However, the dominant question presented is whether complainant acquired an easement by prescription over that portion of defendant's property used along with a portion of complainant's property as a common driveway. The precise question is one of first impression for this court.

The general principles of law governing easements by prescription in Virginia are summarized in *Craig* v. *Kennedy*, 202 Va. 654, 657, 119 S.E.2d 320, 322, 323, as follows:

"In order to establish a private right of way over the lands of another by prescription it must appear that the use of the roadway by the claimant was adverse, under claim of right, exclusive, continuous, uninterrupted, and with knowledge and acquiescence of the owner of the land over which it passes, and that such use has continued for a period of at least twenty years. *Powell* v. *Magee*, 191 Va. 315, 321, 60 S.E.2d 897, 900; *Williams* v. *Green*, 111 Va. 205, 207-208, 68 S.E. 253, 254.

"We have said many times that 'Where there has been an open, visible, continuous and unmolested use of a road across the land of another for at least twenty years, the use will be presumed to be under claim of right, and places upon the owner of the servient estate the burden of rebutting this presumption by showing that the use was permissive, and not under a claim of right.' *Powell* v. *Magee*, supra; *Rives* v. *Gooch*, 157 Va. 661, 663, 162 S.E. 184; *Davis* v. *Wilkinson*, 140 Va. 672, 675, 676, 125 S.E. 700, 701, 702."

The complainant recognizes that the cases reciting the above quoted principles do not involve a dispute over a common driveway as exists in the instant case. Rather, they consider the rights acquired by an adjoining landowner because of the constant and continuous use of a way entirely on another's land in order to reach a public road or highway.

The complainant argues that the principles set forth above apply

in the case at bar because both involve the use of the property of another. She contends that it makes no difference whether the way passes entirely over another's land or merely passes over a part thereof by the "straddling" of a boundary line.

In support of her position, complainant relies heavily upon *Plaza* v. *Flak*, 7 N.J. 215, 81 A.2d 137 and those cases cited in 27 A.L.R.2d 332 *et seq.* which follow the principles set forth in *Plaza*. She points out that the majority view represented by *Plaza* closely follows the principles enunciated in *Craig* v. *Kennedy, supra*.

In *Plaza*, the plaintiff brought suit to compel the removal of a fence that defendant had erected upon the boundary line of two adjoining properties. The evidence showed that there were two adjoining buildings separated by an alley 4.75 feet wide; that the boundary line ran approximately down the middle of the alley; that the alley had been used in common by both parties for more than the prescriptive period; that there were never any objections or agreements made as to the alley's use; that no permission was ever asked or given, and that the use had been continuous, open and notorious throughout the time involved. The plaintiff argued that he had acquired an easement by prescription. The defendant contended that there was no showing that the use was exclusive, hostile and with the intent to claim against the owner.

The court held, *inter alia*, that when one who claims the right to an easement by prescription in such a situation shows open, continous, uninterrupted, exclusive use for the prescriptive period, a presumption arises that the use was adverse and the burden of producing evidence to rebut the persumption is on the opposing party. The court concluded that since the defendant did not rebut the presumption by showing permissive use, the evidence adduced was sufficient to establish an easement by prescription.

In 25 Am. Jur. 2d, Easements and Licenses, § 45, p. 456 it is stated:

"In the case of a private way or alley lying over and along the boundary between lots or tracts of land that has been used without interruption by the adjoining owners for the full prescriptive period for a common purpose, the user of each owner is generally regarded as adverse to the other so as to establish an easement by prescription in either owner against the other. There is, however, some authority to the contrary." See also 28 C.J.S., Easements, § 18(j), p. 673; 2 Thompson, Real Property (1961 Repl. Vol.) § 345, p. 253.

Unquestionably, the great weight of authority is in accord with the view that the principles which govern prescriptive easements

over the lands of others likewise apply to those situations involving common driveways or walkways along boundary lines which embody lands of adjoining property owners. A number of jurisdictions have had occasion to pass upon the precise question. Among the cases supporting the majority view are: *Shanks* v. *Floom*, 162 Ohio St. 479, 124 N.E.2d 416; *Richins* v. *Struhs*, 17 Utah 2d 356, 412 P.2d 314; *Bernstein* v. *Dodik*, 129 Cal. App. 454, 18 P.2d 983; *Johnson* v. *Whelan*, 171 Okla. 243, 42 P.2d 882; *Gano* v. *Strickland*, 211 Miss. 511, 52 So.2d 11; *Jones* v. *Ross*, 54 Tenn. App. 136, 388 S.W.2d 640; *Andrzejczyk* v. *Advo System, Inc.*, 146 Conn. 428, 151 A.2d 881, and *Ellsworth* v. *Martin*, 208 Iowa 169, 225 N.W. 417.

In support of her position that complainant acquired no prescriptive easement, Miss Lanigan cites *Hopkins* v. *Parker*, 296 Mich. 375, 296 N.W. 294. In that case complainant sought to close a common driveway by a fence. The defendant contended that he had acquired a prescriptive easement by adverse use. The respective properties were acquired from a common grantor and there was never any objection raised to the use of the driveway until the dispute over the fence arose. Neither the origin of the driveway nor any agreement governing its use was shown. The court rejected complainant's claim of a prescriptive easement, and stated:

"It is evident that this driveway originated as a convenience common to the needs of both properties and without thought on the part of the users of any claim of exclusive right thereto. We are unable to discover any change in such mutual user. A prescriptive easement does not arise out of a mutual use of a driveway until mutuality ends and adverse user commences and continues for the period essential to the fastening of such a right. If the user was permissive at inception, such permissive character will continue of the same nature and no adverse user can arise until there is a distinct and positive assertion of a right hostile to the owner and brought home to him." 296 Mich. at p. 379, 296 N.W. at p. 296.

Under that holding, Miss Lanigan says "there must be a showing of an adverse act, not a mere presumption arising out of use, in the rather unique situation of a common driveway in order to establish an easement by prescription."

Miss Lanigan argues that the evidence in the case at bar shows that the common driveway was "permitted by neighborly sufferance or acquiescence, not by any adverse claim of right or hostile act." She concedes that there was no direct evidence showing how the use of the common driveway began. Indeed, the trial court found that there

was "no showing in fact of an original agreement." However, the trial court, in applying the principles of circumstantial evidence, was of opinion that since the driveway was "cut right down the middle of the line," it was impossible to believe "that it was created other than by agreement." In its oral opinion, the court further stated that "when two people get together, two adjoining land owners, with a common driveway created for their common use and benefit, I find it difficult to hold that this is a hostile or an adverse use. I think it is a beneficial use for the two." The court concluded that the use of the driveway by complainant and her predecessors in title was by permission prior to the time the fence was erected by Miss Lanigan and thus no easement by prescription was acquired.

We believe that the majority view as set forth in *Plaza* v. *Flak*, *supra*, is better reasoned and more logical than the minority view expressed in *Hopkins* v. *Parker*, *supra*. As far as prescriptive rights are concerned, we find no compelling or valid reason to distinguish a driveway case involving properties of both adjoining landowners from a case where the roadway used is wholly on the property of another. In each case the easement sought is across property of another. Whether it be part of a driveway or all of it makes no difference. We hold that the principles enunciated in *Craig* v. *Kennedy*, *supra*, apply with equal force to common driveway cases.

In the case at bar, the record shows that the use of the driveway by complainant and her predecessors in title was exclusive, continuous, uninterrupted, and with knowledge and acquiescence of the defendant and her predecessors in title for more than twenty years. Under these circumstances, applying the rule in *Craig* v. *Kennedy*, *supra*, a rebuttable presumption arose that the use was under a claim of right. The defendant, owner of the servient estate, offered no evidence to rebut this presumption by showing that the use was permissive and not under a claim of right. Hence complainant acquired an easement by prescription as a matter of law.

As has been said, all of the witnesses stated that they had no knowledge of the existence of any agreement concerning the use of the driveway. In fact there was no evidence introduced as to its origin. The trial court applied the principles of circumstantial evidence and found that there was an agreement and the use was permissive. We have not been directed to any authority to support such a finding in cases involving prescriptive easements, and in our view the principles of circumstantial evidence do not apply. There must be a positive showing that an agreement existed.

Finally, Miss Lanigan contends in her brief that even if Mrs. Causey, the complainant, acquired an easement by prescription, it was abandoned by Guthrie, Mrs. Causey's agent. The trial court made no finding on this question and Miss Lanigan has assigned no cross-error. Hence, the question is not properly before us for a decision, Rule 5.1, § 4 of Rules of Court; *Craig* v. *Kennedy, supra,* 202 Va. at p. 655, 119 S.E.2d at p. 321.

Accordingly the decree appealed from is reversed and the case remanded for the entry of a decree not inconsistent with the views herein expressed.

*Reversed and remanded.*