# STATE OF MICHIGAN

# COURT OF APPEALS

TERRANCE R. FOWLE and DEBRA FOWLE,

      Plaintiffs-Appellees,

v

MARK DUSHANE,

      Defendant-Appellant.

UNPUBLISHED
October 16, 2018

No. 339913
Lenawee Circuit Court
LC No. 13-004812-CH

Before: MURRAY, C.J., and BORRELLO and RONAYNE KRAUSE, JJ.

PER CURIAM.

In this quiet title action concerning a driveway easement, defendant appeals as of right the circuit court's opinion and order in favor of plaintiffs following a bench trial. We affirm.

As this Court noted in a prior related appeal involving the same parties, *Dushane v Fowle*, unpublished per curiam opinion of the Court of Appeals, issued September 14, 2017 (Docket No. 332392) (*Dushane I*), p 1, the dispute between the parties arises out of an express easement granted in 1989 by way of a consent judgment settling litigation between the parties' predecessors in interest. The dominant (i.e., benefitted) estate now belongs to plaintiffs, while the adjacent, servient estate belongs to defendant.[1] *Id*. Both are commercial properties.

The subject of the easement is the use, "for ingress and egress," of a driveway situated on defendant's property. The driveway connects to the main roadway, M-50. In essence, the instant dispute arose because, for decades, the location and course of the easement as actually used by the parties differed slightly from the easement's legal description (as described in the 1989 judgment). In other words, as used by the parties, the driveway easement covered a triangular "wedge" of defendant's property that fell outside the bounds of the easement's metes-and-bounds legal description. This case arose after the Michigan Department of Transportation (MDOT) repaired an underlying culvert in 2013, after which it restored defendant's driveway to the *stated* dimensions of the express easement. This revealed the parties' prior mistake

---

[1] "The land served or benefited by an easement is called the dominant estate and the land burdened by an easement is called the servient estate." *D'Andrea v AT&T Mich*, 289 Mich App 70, 73 n 2; 795 NW2d 620 (2010).

concerning the bounds of the easement, ultimately prompting the trespass action that was at issue in *Dushane I*, along with the quiet title action that is at issue here.

On appeal, defendant argues that the trial court erred in several respects, and those arguments implicate two standards of review. We review de novo "the application of legal doctrines, such as res judicata and collateral estoppel," *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008), a trial court's decision concerning a prescriptive easement, *Mulcahy v Verhines*, 276 Mich App 693, 698; 742 NW2d 393 (2007), and a trial court's equitable decision in a quiet title action, *Marlette Auto Wash, LLC v Van Dyke SC Properties, LLC*, 501 Mich 192, 201; 912 NW2d 161 (2018). Any related factual findings are reviewed for clear error, *Mulcahy*, 276 Mich App at 698, which occurs when "after a review of the record, this Court is left with a definite and firm conviction that a mistake was made," *Lawrence v Burdi*, 314 Mich App 203, 220; 886 NW2d 748 (2016).

Defendant first contends that the trial court erred, at several different stages of the proceedings below, by failing to hold that plaintiffs' quiet title action was barred under the doctrine of res judicata.

As this Court recently noted in *In re Bibi Guardianship*, 315 Mich App 323, 333; 890 NW2d 387 (2016):

> The doctrine of res judicata is intended to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and encourage reliance on adjudication, that is, to foster the finality of litigation. For res judicata to preclude a claim, three elements must be satisfied: (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first. [T]he burden of proving the applicability of . . . res judicata is on the party asserting it. [Quotation marks and citations omitted; alterations in original.]

For purposes of the third element, "[o]ur Supreme Court 'has taken a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, *exercising reasonable diligence*, could have raised but did not.' " *Garrett v Washington*, 314 Mich App 436, 442; 886 NW2d 762 (2016), quoting *Adair v Michigan*, 470 Mich 105, 121; 680 NW2d 386 (2004) (emphasis in *Garrett*).

Defendant's argument ignores the fundamental principle that res judicata does not preclude "a subsequent action between the same parties or their privies when the facts have changed *or new facts have developed*[.]" *Bibi*, 315 Mich App at 334 (quotation marks and citations omitted). Or, to phrase the holding in *Adair* another way, a final judgment in a prior action does *not* bar a party's claim in a subsequent action when, even through the exercise of reasonable diligence, the party could not have raised that claim during the prior action. *Adair*, 470 Mich at 121.

Here, several facts that are directly material to plaintiffs' instant action to quiet title developed only *after* the 2004 litigation had concluded in 2005: (1) any potential claim accrued, i.e., became actionable, (2) MDOT altered the physical location of the driveway in 2013,

revealing that the parties had previously been mistaken about the boundaries of the easement, and (3) thereafter, defendant began to physically block the path of the driveway easement as it had been used by the owners of both properties since the 2004 litigation. For those reasons, plaintiffs' quiet title action could not have been asserted during the 2004 litigation, and the trial court correctly determined that res judicata did not bar this action.[2]

Pointing to the fact that plaintiffs filed a document during the 2004 litigation admitting that they had not used the easement since they purchased the property, defendant next argues that the trial court erred by failing to hold that plaintiffs were collaterally estopped from introducing proofs in this action that they had, in fact, used the easement since 1995 (the year that they purchased the property). We again disagree.

> Collateral estoppel is a flexible rule intended to relieve parties of multiple litigation, conserve judicial resources, and encourage reliance on adjudication. The doctrine of collateral estoppel must be applied so as to strike a balance between the need to eliminate repetitious and needless litigation and the interest in affording litigants a full and fair adjudication of the issues involved in their claims. [*Bibi*, 315 Mich App at 331-332 (quotation marks and citations omitted).]

Defendant has failed to properly support his argument concerning the preclusive effect of the 2004 litigation. "Collateral estoppel bars relitigation of an issue in a new action arising between the same parties or their privies when the earlier proceeding resulted in a valid final judgment *and the issue in question was actually and necessarily determined in that prior proceeding.*" *Leahy v Orion Twp*, 269 Mich App 527, 530; 711 NW2d 438 (2006) (emphasis added). Defendant cites no authority for the proposition that a pleaded admission from a prior action can be considered to be a fact that was actually determined in that prior action. In any event, this argument is unpersuasive on the merits.

First, as a general rule, a fact is not "actually" determined unless it was submitted to the trier of fact and conclusively determined, which never occurred in the 2004 litigation. See *Keywell & Rosenfeld v Bithell*, 254 Mich App 300, 343 n 49; 657 NW2d 759 (2002). Second, even assuming, arguendo, that plaintiffs' pleaded admission from the 2004 litigation qualifies as a fact that was actually determined in that action, it was not *necessarily* determined. In the 2004 litigation, the circuit court had two distinct motions pending before it: plaintiffs' motion for defendant to show cause why he should not be held in contempt for blocking the easement and defendant's parents' motion to extinguish the easement through prescription. As the circuit court

---

[2] This conclusion is wholly consistent with this Court's decision in *Dushane I* that res judicata *did* bar defendant's 2013 trespass action against plaintiffs. Unlike plaintiffs' quiet title action in here, the viability of defendant's trespass claim in *Dushane I* was in no way dependent on the expiration of some period of time. On the contrary, defendant's claim in *Dushane I* was actionable the first time that plaintiffs allegedly trespassed on any portion of defendant's property outside the bounds of the easement. Hence, that trespass claim could have been, through defendant's exercise of reasonable diligence (ordering a survey), pursued during the 2004 litigation. *Dushane I* is thus distinguishable from the instant case.

noted at the 2005 evidentiary hearing, it could dispense with the motion to extinguish the easement solely on the basis of defendant's father's testimony, which admitted that the full prescription period had not yet lapsed. Moreover, because the trial court never actually ruled on plaintiffs' show-cause motion, it was never forced to determine whether defendant's parents had blocked the easement. And even if it had made such a determination, the court would not have been required to determine whether they had blocked the easement to such an extent that plaintiffs had been utterly unable to use it for ingress and egress from M-50. That question was immaterial.

Finally, defendant contends that because plaintiffs' use of the driveway was interrupted during the timeframe surrounding the 2004 litigation, the trial court erred by granting plaintiffs a prescriptive easement. We agree but conclude that reversal is nevertheless unwarranted.

"Just as ownership of land may be acquired through adverse possession, so too may an easement be acquired through prescription." *Marlette*, 501 Mich at 202. The elements to obtain a prescriptive easement "are the same as those of title by adverse possession, with the exception" of exclusivity. *Id*. at 202-203 (quotation marks and citation omitted). Thus, a party seeking to acquire a prescriptive easement "must show clear and cogent proof of possession that is actual, *continuous*, open, notorious, hostile, *and uninterrupted for the relevant statutory period*" of 15 years. *Id*. at 202-203, 211 (emphasis added).

Although there is Michigan caselaw discussing interruption in the context of adverse possession, we find little helpful authority covering that same subject in the context of prescriptive easements, and the parties have provided us none. Thus, we resort to secondary sources for guidance. According to 28A CJS, Easements, §38, p 237:

> An interruption or breach of continuity of the use, sufficient to stop the running of the prescriptive period, ordinarily occurs only where there is a physical interruption or some unequivocal act of ownership on the part of the owner of the servient tenement, or of one in privity with him or her or of a third party. A temporary or accidental interruption, generally, is not sufficient.

"A suit by the owner of the servient tenement, to test the right to the easement, is an interruption of the use." 28A CJS, Easements, §40, pp 238-239. But see Restatement Property, 1st, §459, p 2395 (stating that "[a]n adverse use is uninterrupted when those against whom the use is adverse" neither "(a) bring *and pursue to judgment* legal proceedings *in which the use is determined to be without legal justification*," nor "(b) cause a cessation of the use without the aid of legal proceedings") (emphasis added). Likewise, a physical barrier erected across the easement, which prevents the dominant estate from continuing its use, interrupts the prescriptive period. *Hopkins v Parker*, 296 Mich 375, 376-380; 296 NW 294 (1941) (fence erected across driveway). See also 157 Am Jur Proof of Facts 3d, §59 (noting that if the owner of the servient estate "takes any action that stops a claimant's use of the property" during the prescriptive period, such as erecting physical barriers, "for any period of time, no matter how brief," "this action will defeat a claim for a prescriptive easement").

In this instance, defendant filed a motion in 2004 seeking to extinguish the easement through abandonment and prescription. At trial, plaintiffs also admitted that defendant

-4-

physically blocked some portions of the easement during that timeframe, partially restricting its use and curtailing the use of some portions entirely. Based on this evidence, defendant's actions were sufficient to interrupt the prescriptive period in 2004—i.e., less than 15 years after plaintiffs took possession of the dominant estate and began using the easement. Less than 15 years also passed between the conclusion of the 2004 litigation and the commencement of plaintiffs' instant action to quiet title. Consequently, we agree with defendant that the trial court erred. Plaintiffs failed to present clear and cogent proof that their use of the easement was not interrupted during the prescriptive period.

However, reversal is not warranted. "This Court . . . will not reverse when a trial court reaches the right result for a wrong reason." *Neville v Neville*, 295 Mich App 460, 470; 812 NW2d 816 (2012). Based on the trial court's factual findings, the same outcome would be reached under a closely related theory, acquiescence, which has long been recognized in this state.[3] See generally *Hanlon v Ten Hove*, 235 Mich 227, 233; 209 NW 169 (1926); *Walters v Snyder*, 239 Mich App 453, 457; 608 NW2d 97 (2000); *Sackett v Atyeo*, 217 Mich App 676, 681; 552 NW2d 536 (1996); *Pyne v Elliott*, 53 Mich App 419, 426-428; 220 NW2d 54 (1974); *Rock v Derrick*, 51 Mich App 704, 708; 216 NW2d 496 (1974).

The Supreme Court has "repeatedly held . . . that a boundary line long treated and acquiesced in as the true line, ought not to be disturbed on new surveys." *Johnson v Squires*, 344 Mich 687, 692; 75 NW2d 45 (1956) (quotation marks and citations omitted). If certain boundary lines "have been acquiesced in for a sufficient length of time, they fix the 'true line' as matter of fact and as matter of law." *Hanlon*, 235 Mich at 233. This rule is intended to promote "peaceful resolution of boundary disputes." *Killips v Mannisto*, 244 Mich App 256, 260; 624 NW2d 224 (2001).

As the Court explained in *Warner v Noble*, 286 Mich 654, 662; 282 NW 855 (1938), adverse possession and acquiescence are complimentary concepts, inasmuch as one theory often covers a situation that the other does not:

> The basis of the rule that boundaries may be fixed by verbal agreement, long acquiesced in, and the theory of acquiring title by adverse possession are diametrically opposed to each other. The theory of ownership to an agreed

---

[3] A quiet title action is equitable in nature, which this Court reviews de novo. Additionally, acquiescence represents an alternative ground for affirmance, and the trial court's stated factual findings fully support a finding of acquiescence. See *Mack v Detroit*, 467 Mich 186, 207; 649 NW2d 47 (2002) (noting that it is "well understood" that an appellate court has discretion to "address[] a controlling legal issue despite the failure of the parties to properly frame the issue," particularly where their briefing fails to recognize some dispositive rule or precedent); *Tkachik v Mandeville*, 487 Mich 38, 46; 790 NW2d 260 (2010) (reasoning that "[e]quity allows complete justice to be done in a case by adapting its judgments to the special circumstances of the case") (quotation marks, citation, and brackets omitted); *Thill v Danna*, 240 Mich 595, 597; 216 NW 406 (1927) (stating that "[e]quity looks at the whole situation and grants or withholds relief as good conscience dictates").

boundary proceeds upon the ground there has been a *bona fide* dispute as to the true boundary line and the parties have by peaceful agreement made a friendly settlement of this dispute which has been acquiesced in, carried out and performed by the respective parties. The theory of adverse possession is the antithesis of the doctrine of friendly settlement and peaceful acquiescence. It proceeds upon the ground of open, notorious, antagonistic acts of unremitting hostility under a claim of right to the claim of rights of the adverse party. And it must be continued for a period of 15 years.

Indeed, in circumstances such as those now at bar, physical boundaries can be conclusively established by acquiescence over a period of *less* than the applicable prescriptive period. See *Pyne*, 53 Mich App at 427. When a boundary is established by a mutual agreement between the owners of adjacent properties—an agreement which follows a dispute between those owners over that same boundary—and the owners all subsequently acquiesce that the boundary, as actually used, corresponds to the boundary that was agreed upon, it will thereafter "be considered the true line between them," even if "the period of such acquiescence falls short of the time fixed by the statute of limitations for gaining title by adverse possession." *Id*., quoting *Cochran v Milligan*, 359 Mich 148, 151; 101 NW2d 292 (1960) (quotation marks and citation omitted). Acquiescence will be found where, over time, the owners generally "treated" a certain boundary as if it were the actual boundary. *Walters*, 239 Mich App at 458. It need not be proven that they did so continuously, in some sort of ongoing, objectively noticeable fashion. *Id*. Unlike prescription, which must be proven by clear and cogent evidence, *Marlette*, 501 Mich at 211, the less stringent preponderance-of-the-evidence quantum of proof is required to show acquiescence, *Killips*, 244 Mich App at 260.

It is undisputed that in all of the years after the 1989 judgment was entered—up until 2013—the owners of both the dominant estate and the servient estate treated the actual physical location of defendant's driveway as if it was properly situated within the bounds of the easement to which the property owners had agreed in the 1989 judgment. Such acquiescence exceeded 15 years, and even if it had not, it would suffice because the owners of the estates agreed to it in 1989 following a consent judgment that settled litigation between them concerning this very easement. Therefore, under the doctrine of acquiescence, defendant is barred from now contending that the boundaries of the easement are different than those to which both he and his predecessors in interest acquiesced for more than two decades. For that reason, the trial court reached the correct result in this case, albeit for the wrong reason.[4]

---

[4] Defendant also attempts to argue that the trial court erred by improperly expanding the scope of the express easement to include commercial trucking. However, "a court speaks through its written orders," *In re Leete Estate*, 290 Mich App 647, 658; 803 NW2d 889 (2010), and the order appealed here does not state any holding about whether commercial truck traffic falls within the proper scope of either the express easement (as stated in the 1989 judgment) or the prescriptive easement. Rather, the order appealed expressly permits "use of the driveway *in accordance with the Order set forth in 1989*[.]" (Emphasis added.) In other words, it does not appear that the trial court actually issued the unfavorable ruling that defendant now attributes to

-6-

Affirmed.

/s/ Christopher M. Murray
/s/ Stephen L. Borrello
/s/ Amy Ronayne Krause

---

it. Because, as a general rule, "[a]ppellate review is limited to issues actually decided by the trial court," *Allen v Keating*, 205 Mich App 560, 564-565; 517 NW2d 830 (1994), we decline to consider the merits of this issue. Had defendant desired such a ruling below, he should have asserted a counterclaim or affirmative defense on the subject of the easement's scope, or made a relevant motion. He did not. The onus was not on the trial court to decide what forms of relief defendant sought, or what defenses he might raise, and defendant should not be permitted to assign his own litigation failures as error requiring reversal. See *Walters v Nadell*, 481 Mich 377, 388; 751 NW2d 431 (2008) ("[t]rial courts are not the research assistants of the litigants"); *Bloemsma v Auto Club Ins Ass'n (After Remand)*, 190 Mich App 686, 691; 476 NW2d 487 (1991) ("Error requiring reversal must be that of the trial court, and not error to which the appellant contributed by plan or negligence.").