COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Friedman and White
Argued at Christiansburg, Virginia

**PUBLISHED**

LISA G. BOXLEY

v.       Record No. 0183-23-3

ESTEL R. CROUSE, ET AL.

OPINION BY
JUDGE ROBERT J. HUMPHREYS
DECEMBER 28, 2023

FROM THE CIRCUIT COURT OF HIGHLAND COUNTY
Edward K. Stein, Judge

William A. Young, III (William A. Young, III, P.C., on brief), for
appellant.

Randall T. Perdue (TimberlakeSmith, on brief), for appellees.

Lisa Boxley appeals from an order of the Highland County Circuit Court granting Estel

and Vickie Crouse a prescriptive easement over a right of way across her land and ordering her

to remove a gate across that right of way.  On appeal, Boxley contends that the circuit court erred

in finding that the Crouses established all of the elements of a prescriptive easement and that the

court erred in holding that Code § 33.2-110(A) prohibited her from erecting the gate across the

right of way.

## BACKGROUND[1]

On appeal, we view the facts in the light most favorable to the party who prevailed

below.  *Johnson v. DeBusk Farm, Inc.*, 272 Va. 726, 728 (2006).  This Court will not disturb a

circuit court's judgment in a bench trial "unless it is plainly wrong or without evidence to

support it."  *Hafner v. Hansen*, 279 Va. 558, 562 (2010).

---

[1] Boxley filed a statement of facts in lieu of a transcript in this case; accordingly, our review
of the facts of this case is derived entirely from Boxley's statement of facts.

Boxley and the Crouses own adjoining parcels of land in Highland County. To access the Crouse property from State Route 220, the Crouses must turn from State Route 220 onto Whippoorwill Lane, then turn onto Hawk Trail. Hawk Trail cuts across two parcels of land: the Snow property (not at issue in this appeal) and the Boxley property.

The first use of Hawk Trail contained in the record was by F. Clayton Plecker and Sons, Inc. ("the Pleckers"). The owner of the Boxley property at that time was Gordon Corbett. The Pleckers acquired their plot (now the Crouse property) in 1976 and used Hawk Trail as the sole access to the property for 12 years until 1988; the Pleckers maintained, improved, and widened portions of Hawk Trail during their ownership of the Crouse property. The Pleckers "never asked anyone for permission to use Hawk Trail," nor were they ever told that they needed permission, nor were they ever prohibited from using Hawk Trail.

In 1988, the Pleckers sold the property to Alice Dewitt. No evidence was presented at trial of the nature of the use of Hawk Trail by Dewitt. On October 18, 1989, Dewitt sold the property to the Crouses. The Crouses were never told they had permission to use Hawk Trail; nor were they told that they were prohibited from using Hawk Trail. They simply believed that they had the right to use Hawk Trail and did so. Like the Pleckers, the Crouses have maintained and improved Hawk Trail.

In 1995, Corbett erected a lockable gate across the portion of Hawk Trail that crossed his property. At an unknown time in 1995, Corbett mailed the Crouses a key to the gate; the key was not accompanied by any letter or note of explanation, and the Crouses and Corbett never discussed the key or their use of Hawk Trail. In a letter to a different neighbor, Corbett said that he "didn't intend to close that road to my neighbors who join us. That's the reason for no lock." Later in the letter, Corbett referred to the gate as "unlocked." In the light most favorable to the prevailing party, the Crouses, Corbett never locked the gate.

Corbett passed away in 2013, and his parcel passed to Lisa Boxley via a trust on August 15, 2014. In 2020, Boxley installed a different lock on the gate and did not provide the Crouses with a key. In January 2021, the Crouses filed suit against Boxley seeking a declaratory judgment establishing a prescriptive easement as well as an injunction seeking the removal of the gate in its entirety. After a hearing, the circuit court entered judgment for the Crouses and ordered Boxley to remove the gate pursuant to Code § 33.2-110(A). Boxley now appeals.

ANALYSIS

I. Boxley's Arguments Against a Prescriptive Easement

"The claimant of a prescriptive easement . . . must prove by clear and convincing evidence that 'the claimant's use of the [property] in question was adverse, under a claim of right, exclusive, continuous, uninterrupted, and with the knowledge and acquiescence of the owner of the land over which it passes, and that the use has continued for at least 20 years.'" *Amstutz v. Everett Jones Lumber Corp.*, 268 Va. 551, 559 (2004) (quoting *Martin v. Moore*, 263 Va. 640, 645 (2002)). Clear and convincing evidence "is intermediate proof, more than a mere preponderance but less than proof beyond a reasonable doubt." *Id.* (quoting *Oberbroeckling v. Lyle*, 234 Va. 373, 379 (1987)).

Boxley argues that the circuit court erred in its judgment that the Crouses established a prescriptive easement for two reasons: first, that the Crouses failed to prove that their use of Hawk Trail was continuous and uninterrupted for the prescriptive period because Corbett erected the gate in 1995; and second, that the Crouses failed to prove that their use was hostile to Corbett because Corbett gave the Crouses permission to use Hawk Trail by providing them a key to the gate. For the following reasons, we disagree with both assertions.

First, the Crouses' use of Hawk Trail was continuous and uninterrupted for the prescriptive period—which is 20 years in Virginia. *Id.* For a use to be continuous, it need not be

"daily, weekly, or even monthly." *Ward v. Harper*, 234 Va. 68, 72 (1987). Instead, the use must only be "of such frequency and continuity as to give reasonable notice to the landowner that [such a] right is being exercised against him." *Amstutz*, 268 Va. at 560 (alteration in original) (quoting *McNeil v. Kingrey*, 237 Va. 400, 404 (1989)). It is undisputed that the Crouses continuously used Hawk Trail after Corbett erected the gate in 1995. This use only stopped once Boxley changed the lock on the gate in 2020. Accordingly, the undisputed evidence before the circuit court showed that the Crouses used Hawk Trail for a period of at least 25 years, clearly in excess of the prescriptive period.[2]

Second, the evidence supports the circuit court's finding that the Crouses' use of Hawk Trail was adverse to Corbett's own property right. An "adverse" use is "the intentional assertion of a claim hostile to the ownership right of another." *Chaney v. Haynes*, 250 Va. 155, 159 (1995). A claimant "is in *hostile* possession if his possession is under a claim of right and adverse to the right of the true owner." *Grappo v. Blanks*, 241 Va. 58, 62 (1991). "When used in the context of adverse possession, the terms *claim of right*, *claim of title*, and *claim of ownership* are synonymous. They mean a possessor's intention to appropriate and use the land

_____

[2] To the extent that Boxley argues that the mere erection of the gate destroyed *any* claim of an easement, our Supreme Court has clearly refuted such an argument. In *Davis v. Wilkinson*, 140 Va. 672, 681 (1924), the Court said:

> It is contended on behalf of the appellants that the erection of these gates from time to time by the owners of the Davis tract constituted such a protest against the use of the right of way as to stop the running of the prescriptive period, and so to defeat the acquisition of any legal right to its use. Enclosing parts of the farm lands, through which a private way passes, by gates is not unusual and is often essential to the proper conduct of farming operations in order to keep out cattle and other stock. The evidence in the instant case leads to the inference that the gates in question were placed in position and used by the owners of the servient tract, entirely as a part of their farming operations and without objection from the parties using the right of way. Such an occurrence does not defeat the claim of the owner of the dominant tenement.

as his own to the exclusion of all others." *Id.* The claimant need not make a hostile intention express. *Id.* A claim of right "may be implied by a claimant's conduct. Actual occupation, use, and improvement of the property by the claimant, as if he were in fact the owner, is conduct that can prove a claim of right." *Id.* "Permission to occupy the land negates hostility." *Horn v. Webb*, ___ Va. ___, ___ (Feb. 9, 2023). Where the dominant owner's use of the servient parcel is with the permission of the servient owner, the use can never ripen into a prescriptive easement. *Id.* at ___.

Importantly, however, where the use by the claimant was "open, visible, and continuous throughout the required prescriptive period," the claimant is entitled "to a presumption that the use arose adversely or under a claim of right." *Hafner*, 279 Va. at 563. Once the presumption is established, the burden then shifts to the owner of the servient estate to show that the "use was permissive, and not under claim of right." *Johnson*, 272 Va. at 730.

Our Supreme Court has also held that the owner of the servient estate may not rebut this presumption by relying solely on circumstantial evidence. In *Causey v. Lanigan*, 208 Va. 587, 593 (1968), the Court held that the circuit court erred in finding that the servient landowner rebutted the presumption by applying the principles of circumstantial evidence. The Court noted, "We have not been directed to any authority to support such a finding in cases involving prescriptive easements, and in our view the principles of circumstantial evidence do not apply. There must be a positive showing that an agreement existed." *Id.* This line of thought was reinforced recently in *Horn v. Webb*, where the Supreme Court reversed the circuit court's finding that a servient landowner rebutted the presumption, noting that the landowner only

"offered circumstantial evidence of a permission to dock the boat that existed between the [previous servient landowner] and the [dominant landowner]."[3] ___ Va. at ___.

The Crouses presented evidence that their use of Hawk Trail was open, visible, and continuous from at least 1995 to 2020—a period of 25 years. As such, the Crouses were entitled to the presumption that their use "arose adversely or under a claim of right." *Hafner*, 279 Va. at 563. Therefore, the burden then shifted to Boxley to put forward affirmative evidence that the Crouses' use arose out of permission. When viewed in the light most favorable to the Crouses, the only evidence that the Crouses' use of Hawk Trail was by permission of Corbett was that Corbett mailed the Crouses a key to a gate that was never locked. This is circumstantial evidence of an agreement and is not sufficient to rebut the presumption. *See Causey*, 208 Va. at 593; *see also Horn*, ___ Va. at ___ ("At best, the [servient owners] offered *circumstantial* evidence of a permission to dock the boat that existed between the [dominant owner] and the [prior servient owner]." (emphasis added)). Accordingly, the circuit court did not err in finding that the Crouses proved that their use of Hawk Trail was adverse.

Because the record supports the circuit court's finding that the Crouses' use of Hawk Trail was adverse, under a claim of right, exclusive, continuous, uninterrupted, and with the knowledge and acquiescence of the owner of the land over which it passes and that the use has continued for at least 20 years, the circuit court did not err in granting the Crouses a prescriptive easement.

---

[3] It is not immediately apparent why circumstantial evidence is insufficient to rebut the presumption of adverse use in the prescriptive easement context. Indeed, even the presumption of innocence afforded to criminal defendants—"that bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law'"—*may* be rebutted entirely with circumstantial evidence. *In re: Winship*, 397 U.S. 358, 363 (1970) (quoting *Coffin v. United States*, 156 U.S. 432, 453 (1895)); s*ee Moss v. Commonwealth*, 211 Va. 729, 731 (1971). Nonetheless, this Court is bound by the clear precedent established by our Supreme Court, and we cannot deviate from the rule clearly established in *Causey* and *Horn*.

## II. Code § 33.2-110

Boxley argues that the circuit court erred in ordering her to remove the gate across Hawk Trail because it was not joining gates across the right of way. Boxley's argument is foreclosed by case law.

Code § 33.2-110(A) provides that:

> Any person owning land over which another or others have a private road or right-of-way may, except when it is otherwise provided by contract, erect and maintain gates across such roads or right-of-way at all points at which fences extend to such roads on each side thereof.

Boxley argues that the statute is permissive and that simply because her gate does not connect to fences does not mean that the gate must be taken down. In *Ridgewell v. Brasco Bay Corp.*, 254 Va. 458 (1997), the Supreme Court interpreted the predecessor of Code § 33.2-110 as excluding any other gate across a right of way. The Court held that because the servient landowners did not "have fences that extend to each side of the right of way, they [did] not establish[] a right under the statute to erect a gate." *Id.* at 462. The Supreme Court has held that servient landowners may only erect gates across rights of way if the gate has fences that extend to each side of the right of way. The gate erected by Corbett, and maintained by Boxley, is a freestanding gate that is not connected at any side by a fence. As such, the circuit court did not err in ordering Boxley to remove the gate across the Crouses' right of way.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court.

*Affirmed.*